JACOB BREIG v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Master and servant—Defective machinery—Assumption of risk.*

1. A machinist who has worked in a shop for four years must be held to have assumed the risks arising from defects in the machinery of which he had knowledge; citing *Railroad Co. v. Smithson*, 45 Mich. 212.

2. Where, in a negligence case for injuries received while using machinery known by the plaintiff to be defective, there is no evidence that, in answer to complaints made by him, defendant promised to remedy the defects, it is error to submit to the jury the question of defendant's liability upon that theory.

Error to Muskegon. (Dickerman, J.) Argued December 14, 1893. Decided December 22, 1893.

Negligence case. Defendant brings error. Reversed, and no new trial ordered. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin* (*Smiley, Smith & Stevens,* of counsel), for appellant.

*Turner, Turner & Turner,* for plaintiff.

MONTGOMERY, J. This is an action of negligence. Plaintiff was in the employ of defendant in its foundry and car shops. The declaration avers that plaintiff's duties consisted in attending and operating an emery wheel, which wheel was used for the purpose of polishing and sharpening tools used in said shop and for gumming saws; that while the plaintiff was gumming a saw, using the emery wheel for that purpose, the wheel broke, and he was injured by some of the pieces flying into his face, cutting his lips, and doing other serious injury. The negligence charged against the defendant was—

1. That the wheel was not properly encased.
2. That an inferior kind of stone was used; that the stone used was not filled with copper wire, or wire of any kind.
3. That the wheel was run at an improper rate of speed.
4. That the stone furnished to be used in said wheel would not properly fit in such manner that it could be made secure.
5. That there was no rest or guard connected with said wheel.

The declaration also averred that plaintiff had called the attention of the foreman of the shop to the fact that the shaft was too loose, and he had promised to remedy the defect. The circuit judge charged the jury as follows:

"If an employé, knowing that a machine is unsafe, works upon it, consents to work upon it, has preknowledge, understands its condition, understands that it is in an unsafe condition, and knowingly continues to work with it, he assumes the risks that are liable to follow. If

he does that without finding any fault, he assumes them
the more; and he also assumes them even if he does
find fault, unless, as a result of his finding fault, some
promise is made to him by his employer to repair or cor-
rect, and there is a failure to do it within the time prom-
ised, or within a reasonable time."

This is, in the abstract, a correct statement of law.
*Sjogren v. Hall*, 53 Mich. 274; *Prentiss v. Manufacturing
Co.*, 63 Id. 478; *Kean v. Rolling Mills*, 66 Id. 277; *Melzer
v. Car Co.*, 76 Id. 94. But the defendant complains, and
justly, that the facts of the present case did not justify the
submission of the questions covered by the instruction to
the jury; that the instruction left the jury to find that the
defects were complained of by the plaintiff, and that there
was a promise to remedy them. The record contains no
evidence to justify any such charge. On the contrary, the
plaintiff testified:

" I remember calling the attention of Mr. Steinroose, the
foreman, to the condition of the wheel. I cannot tell
exactly the day. It was the same week before I got hurt,
I think, I called his attention to it. I told him to see Mr.
McKinley; the machine had got to be looked over or some-
body would get hurt, maybe get killed right there. He said
he was busy, and he said the shaft is too loose in the box;
that is all he said, and he went. He didn't stop to look
it over. He looked just a little. He had no time for going
around."

The record also discloses that the other alleged defects
were not only open to the plaintiff's inspection, but that
he actually knew of them. He testified:

" I knew there was no solid rest there, and never had
been. I knew before the accident happened that the shaft
was loose in the box, and getting worse all the time; and
I knew it didn't have any guard or cover; that it never
had had. I knew that it run fast. I had seen it a great
many times, almost daily."

The testimony further showed that the plaintiff made
use of a block of wood for a rest, which he sometimes
fastened solidly to the frame, but on the occasion in ques-

tion did not.   This was a block which he had made himself.   He testified that nobody told him to make it; that he made it of his own accord; that the reason he did so was because he could not hold the saw and not have any rest; that he had used the rest a couple of months anyhow.

Plaintiff had worked in the shop for four years as a machinist, and must be held to have assumed the risks arising from such defects as were known to him.   *Michigan Central R. R. Co. v. Smithson,* 45 Mich. 212, and cases above cited.

The evidence as to the material used in the wheel failed to establish that it was a defect to use a wheel not filled with copper wire.   One manufactory had adopted this method of making emery wheels, but it was not general. The wheel in question was manufactured by a reputable company, and any defect in it would not be apparent to observation.   The plaintiff testified:

" I found out that the emery wheel that bursted was too soft right there on the work, gumming the same saw.   I didn't know it was too soft before.   I hadn't used that stone before.   I found that the wheel was too soft at the first tooth, but I couldn't help it; I didn't have any other stone."

He continued to use the wheel until the accident occurred.   It would appear that, if the stone was defective for the reason that it was too soft, the plaintiff was the only one who knew of the defect, and he assumed the risk.

There was no case for the jury.   The circuit judge should, in response to defendant's requests, have directed a verdict for the defendant.

The judgment will be reversed, and no new trial ordered.

The other Justices concurred.