# OTTO BRANDS v. ST. LOUIS CAR COMPANY, Appellant.

**Division Two, July 14, 1908.**

1. **NEGLIGENCE: Master and Servant: Implements.** The master is bound to use reasonable care and precaution to furnish his servant safe appliances with which to do his work and in keeping them in good condition. It is not his duty to furnish any particular kind of tools or appliances, or the newest and most improved patterns. He fulfills his duty by using ordinary care and prudence to furnish safe and suitable tools and appliances; and "reasonably safe" means safe according to the ordinary usages and risks of the business.

2. ———: ———: ———: **Emery Wheel: Inherently Dangerous.** The petition charged that emery wheels, used in grinding castings and tools, if straight, that is, not thicker at the center than at the outer rim, and if not protected by slanting clamps, were inherently liable to break and fly to pieces when in use, but if convex in form and protected by slanting clamps, were safe, and that the master, with knowledge of these facts, had used the straight wheels. Plaintiff, an inexperienced boy, was at work under the direction of the foreman, at a straight wheel eighteen inches in diameter, when it broke, and a flying piece struck him on the head. Two experts testified that any kind of emery wheel was liable to break, but they both further testified that the straight emery wheels were in general use, that they could not recall having seen any convex wheels in actual use in any of the many large manufacturing establishments in the vicinity, though they had seen some exposed for exhibition or sale, and in its most favorable light to plaintiff the testimony of these two experts and of the large number of other witnesses showed no more than that occasionally at very rare intervals during twenty-five years straight emery wheels had been known to explode.

Brands v. St. Louis Car Co.

*Held,* first, it was error to leave to the jury the question of negligence based on the failure of the master to adopt a convex wheel, even though he may have known there was such a device at that time.

*Held,* second, that, as there was no negligence on the master's part in using the straight emery wheel then in general use, and no evidence that such wheels were so inherently liable to fly to pieces as to require him to take notice that they were dangerous, the master was not negligent in not warning the plaintiff of the danger incident to working with emery wheels. Had plaintiff been told that emery wheels at long intervals had been known to explode, it could not have lessened the likelihood of explosion, since there is no pretense that the wheel broke on account of any misuse of the same by plaintiff.

*Held,* third, that, as the expert testified that in an experience of twenty-two years he had known only two straight emery wheels to explode, though they were in very general use, and as there was no evidence that the master had knowledge of such explosions, there is no evidence to support the charge that the master knew that the particular emery wheel was dangerous and liable to explode and yet employed plaintiff to work with it.

2. ———: ———: ———: ———: **Experts: Liability of Particular Wheels to Break.** An expert who knows the constituents and construction of wheels of the particular pattern of the one used, is competent to testify as to its liability to fly to pieces when in use, but if he does not know that, and emery wheels are shown to be of different construction and consistency, he is not competent to testify that all emery wheels are liable to explode.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

REVERSED.

*Seddon & Holland* and *James R. Van Slyke* for appellant.

(1) The court erred in refusing to give the peremptory instruction asked by defendant at the close of all the evidence. (a) There was no evidence of any negligence on the part of defendant in connection with the use of the emery wheel mentioned in the evidence, because the testimony showed that it was the

kind of wheel in general and almost universal use at the time of the accident. This is the conclusive test of the question of negligence. Minnier v. Railroad, 167 Mo. 99; Chrismer v. Tel. Co., 194 Mo. 189; Higgins v. Famming, 195 Pa. St. 599; Service v. Stoneman, 196 Pa. St. 63; Shadford v. Railroad, 111 Mich. 390; Omaha Bottling Co. v. Theiler, 59 Neb. 257; Iron Ship Building Works v. Nuttall, 119 Pa. St. 149; Schroeder v. Car Co., 56 Mich. 132; Demers v. Marshall, 178 Mass. 9; Hale v. Cheney, 159 Mass. 268; Rooney v. Sewall, 161 Mass. 163; Breig v. Railroad, 98 Mich. 222; Allison Mfg. Co. v. McCormick, 118 Pa. St. 519. (b) Plaintiff alleged in his petition that defendant, in spite of having actual knowledge of the fragility of said emery wheel, failed to notify plaintiff of the danger of working near same. There was no testimony that said wheel was fragile and none that defendant had either actual knowledge thereof, and no testimony of any negligence on the part of defendant in failing to give plaintiff notice. (2) The court erred in allowing plaintiff's witnesses Kerr and Schott to testify as experts in reference to the likelihood of emery wheels to break. Said witnesses were not properly qualified as experts to testify in reference to the wheel in question.

*A. R. Taylor* for respondent.

(1) There was evidence on each charge of negligence from which the jury were authorized to find the ultimate fact of the negligence of defendant causing the injury to plaintiff; in such case the settled rule of decision in this State is that a demurrer to the evidence could not be sustained; indeed, if there is any evidence tending to prove either ground of negligence constituting a cause of action, it is error to sustain a demurrer to the evidence. Eckhard v. Railroad, 190 Mo. 611; Powers v. Railroad, 202 Mo. 280. (2) The court did not err in allowing witness Schott to

express an opinion as to the liability of emery wheels to explode and break to pieces. Appellant urges as a reason that he did not know the ingredients of which the wheel was composed. This may be true, and yet experience may teach that it will explode. Probably no one except the proprietor knew the secret of the composition of which the wheel was constructed. But nevertheless, a man acquainted with its use and construction, an experimental machinist who has given study to the subject, was competent to express an opinion upon the question. Helfenstein v. Medart, 136 Mo. 615. The same may be answered to the contention of appellant that witness Kerr was not qualified to express an opinion on the liability of emery wheels to explode. (3) Appellant is mistaken in saying there was no evidence that the wheel was liable to break and explode. We call attention to plaintiff's witnesses Schott and Kerr, on this point, and the evidence and action of defendant's witnesses and foreman, Ahring. If these witnesses are to be believed, there was ample evidence on that issue given both for defendant and plaintiff.

GANTT, J.—This is an action for the recovery of damages on account of personal injuries sustained by the plaintiff, at that time, a minor nineteen years old, on the 29th day of May, 1903, by reason of the explosion of an emery wheel while the plaintiff was in the service of the defendant at its factory at 8000 North Broadway in the city of St. Louis.

The petition in substance alleges that the defendant is a corporation by virtue of the laws of this State, and was at the time of the said injury engaged in the manufacturing business; that on the 29th of May, 1903, plaintiff, who was then a minor nineteen years of age and without experience in the use of emery wheels and ignorant of the dangers incident to such use, was

required by the defendant's foreman to do certain grinding work upon the emery wheel; that emery wheels when in revolution are inherently apt to break, and when so breaking pieces of the wheel are liable to strike and injure persons working at or near them, on account of which it was necessary, for the reasonable security of defendant's employees working about such wheels, that they should be convex, that is, of a construction of greater thickness at the center than near the rim, and that slanting clamps should be adjusted on said wheels to prevent the broken pieces from escaping in case of breakage. That the wheel at which plaintiff was required to work as aforesaid was defective and dangerous, in that it was made of uniform thickness, instead of being made thicker at the center as above described, and in that it was not guarded by slanting clamps. That on the date above mentioned said emery wheel at which plaintiff was required to work broke on account of the said susceptibility of such wheels to break, and a piece of it struck the plaintiff in the head and seriously injured him. The plaintiff was without experience in the work of operating an emery wheel and was ignorant of the dangers and qualities aforesaid, and the defendant's foreman who ordered plaintiff to work at said wheel wholly failed to warn him of the dangers of said work; that defendant was negligent in providing said wheel for said work and in ordering said plaintiff to do said work on said wheel, and was further negligent in failing to warn plaintiff of the said dangers of said work and in failing to instruct him as to said work and the dangers thereof; that on account of the foregoing, plaintiff is damaged in the sum of fifteen thousand dollars.

The answer was a general denial and a general plea of contributory negligence. The reply was a general denial. The trial resulted in a verdict for the

plaintiff for $5,000, from which in due form the defendant appeals to this court.

It will thus be seen that the petition is based upon three counts of negligence. First, providing to the plaintiff work with an appliance of a defective and dangerous construction. Second, that the appliance, to-wit, an emery wheel, is inherently dangerous, in that it will explode and break while in use, and that the defendant was negligent in not providing guards to prevent the pieces of the broken wheel from flying and striking and injuring the plaintiff at work. Third, that said appliance being so dangerous and the plaintiff being ignorant of the dangers of said appliance and without experience in the use of the same, defendant was guilty in failing to warn him of the said dangers, or to sufficiently instruct him as to the safe manner of its use.

The testimony tended to show that as a result of being struck by a piece of emery wheel that exploded in defendant's plant on the 29th day of May, 1903, plaintiff sustained a fracture of the skull. He was treated by a surgeon and an operation performed to remove the piece of bone that was depressed. Plaintiff testified that his eyesight was not as good as it was before the accident, and that he had trouble in stooping over or raising weights. Plaintiff testified that he was nineteen years of age at the time of the accident, and prior to that time had been living in Illinois, engaged in farm work, and had done some work in a coal mine. On the day prior to his injuries he went to work for the defendant. He was set by the foreman to do a piece of work on the twelve-inch emery wheel and worked at that about two hours; after that he was put to work at a smaller emery wheel. On the morning of the 29th of May, 1903, plaintiff was put to work on the large eighteen-inch emery wheel. The foreman showed him how to do the

work. Plaintiff worked on this wheel about six hours before it exploded. About two o'clock of that day the wheel burst and a piece of it struck plaintiff over the right eye. The wheel was about two inches thick throughout. The wheel is what was called in the testimony a straight wheel, as contrasted with a convex wheel. On each side of the wheel there was a clamp. At the time the wheel burst plaintiff was using it in a way in which he had been instructed to use it. Since the accident and in the summer of 1903, plaintiff began to work as a cager in a coal mine and averaged some seven or eight hours a day and earned about $1.25 per day. Prior to his injury he was receiving $1.75 per day.

Upon the first charge of negligence, to-wit, that plaintiff was put to work with a defective and dangerous appliance, the plaintiff called two experts, Harry S. Schott and John Jacob Kerr. Schott testified he was an experimental machinist; that he had had experience in using emery wheels for about twenty-three years; that he did not know the composition or ingredients of emery wheels; that an emery wheel is subjected to different temperatures, and is likely to explode at any time; that this is true of most any kind of emery wheel. That prior to May 29, 1903, there was made an emery wheel that was larger in the center and tapered towards the edge with a slanting clamp on each side; these clamps are so constructed as to hold the parts of the wheel in case of a break. On cross-examination he was asked: "Was your knowledge of conditions such during those three years that you can tell what was in common usage, was it in common usage to use a straight wheel in factories in this vicinity, or common usage to use a convex wheel?" Ans. "There were a great many I expect you might say in common use, of straight wheels, because the average wheels, I expect, used in the city were mostly

small wheels, but when it comes to the larger wheels I expect there were probably nearly as many convex or concave wheels as of the other kind. Q. As I understand you, in the vicinity of St. Louis you think as to the small wheels there were probably more straight than convex, but as to the large wheels you think they were about equal in number? Ans. Perhaps so, I could not form any opinion of that. Q. Take eighteen-inch wheels, eighteen inches in diameter, and two inches thick, do you tell the jury under oath that in the vicinity of St. Louis there were as many convex wheels of that size in use at that time as there were straight wheels? Ans. No, I would not. Q. No you would not. Can you tell me of a manufacturing plant in the city of St. Louis, or in the vicinity of it, that used an eighteen-inch wheel that was convex at that time? Ans. No, I don't believe I could tell you who is using it. Q. Did you see a single eighteen-inch convex wheel in use in the vicinity of St. Louis during that time? Ans. No, sir, I was not interested in that line at that time. Q. You have just told me you had not seen one eighteen-inch wheel, convex in shape, used in this vicinity during those three years; now I ask you this, you will not undertake then to state to the jury that as to eighteen-inch wheels the usual custom was to use convex ones, will you? Ans. No, but wheels eighteen inches in diameter and over are provided with that sort of contrivance, whether they are practically or universally used I could not tell that. Q. You would not undertake to say that eighteen-inch wheels of convex shape were in general use in this vicinity at that time? Ans. No, I have no record of what were used at that time? Q. You will not state what portion were convex and what portion were straight at that time? Ans. No, sir. Q. You will not state that in the city of St. Louis, nor in the vicinity, during

213 Sup.—45

those years there was a single convex wheel of the size we have just mentioned used, will you? Ans. That I do not know.'' Asked how many emery wheels eighteen inches in diameter and two inches thick he had seen explode while in use, he answered, that he had never used any or been around much where they were used. He had never seen one explode; had seen one twelve inches in diameter explode and one six inches in diameter. Had never himself seen any other explode and he had twenty-three years experience. As to convex wheels, the witness testified that prior to the date of the accident, May 29, 1903, he had seen convex wheels on exhibition in shops, but had never seen one in use anywhere. The other expert, Kerr, testified in a general way that there were various kinds of emery wheels and they are apt to break, some more readily than others; that in an experience of twenty-two years he had seen not more than five break. That prior to May 29, 1903, there was made what were called convex wheels, that is, wheels larger at the center and tapering to the edge, equipped with slanting flanges. The theory of this design is to lessen danger in case of an explosion. Witness had seen such a wheel in two places in St. Louis prior to May 29, 1903. He could not state what was the common or general usage before that time.

On this topic the defendant's testimony contradicted the plaintiff's that there was negligence on the part of the defendant in using the said wheel. Carl Horix testified he had dealt with emery wheels for thirteen years and they were not inherently liable to break, and that during that period he had only known one to break or explode. He testified that prior to May 29, 1903, he had never seen a convex emery wheel. John F. Hawkins testified that he had had an experience of twenty-seven years with emery wheels and had never known one of them to break during that

period, and that they were not inherently liable to break. Prior to May, 1903, he had never seen a convex wheel. Witness Pothoff had an experience of twenty-one years and had only known one emery wheel to break. In his opinion they were not inherently liable to break or explode, and prior to injury to plaintiff he had never seen what is known as a convex emery wheel. J. L. Starr, with an experience of twelve years, and W. H. Kane, with an experience of twenty-four years, had handled emery wheels in large numbers and had never known one to break or explode during their experience. They testified they were not inherently liable to break. Walter Miller, who had been foreman of the defendant for six years, testified that there were fifty emery wheels in operation all the time and that about 500 were used during the year and only one had exploded before this one which injured plaintiff. William Ahring testified that during an experience of three or four years with emery wheels he had never known but one to break and that one was broken while it was being tested and not while in use.

This practically was all the evidence on this point.

I.   A vital, if not controlling, question in this case, is whether there was sufficient evidence to submit the case to the jury. It is the settled law of Missouri that the master is bound to use reasonable care and precaution to furnish his servant safe appliances with which to do his work and in keeping them in good order and condition, and the servant does not assume the risk of danger from the use of unsafe machinery, unless the defects are so glaring and obvious that a reasonably prudent man would not attempt to use them. [Bender v. Railroad, 137 Mo. l. c. 245; Minnier v. Railroad, 167 Mo. l. c. 112.] It is not the duty of the master to furnish any particular kind of tools, implements or appliances. His duty in this respect is

to use ordinary care and prudence in furnishing safe and suitable tools and implements. No inference of negligence can arise from evidence which shows that the implement was such as is ordinarily used for like purposes by persons engaged in the same kind of business. [Bohn v. Railroad, 106 Mo. l. c. 433.]

In Steinhauser v. Spraul, 127 Mo. l. c. 562, it was said: "It is well-settled law that an employer is not bound to furnish his employees the safest known appliances, tools or machinery, the latest approved pattern of tools and improvements therein, etc., nor does he render himself liable by failing to discard tools or appliances which are not such, and to supply their places with those which are more safe." And in Minnier v. Railroad, supra, it is said: "All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of the implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily

determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community.'' This statement of the law was adopted and approved by this court in Banc in Chrismer v. Bell Telephone Co., 194 Mo. 189, and is announced in many well-considered cases in other jurisdictions. [Higgins v. Fanning & Co., 195 Pa. St. 599; Service v. Shoneman, 196 Pa. St. 63; Shadford v. Railroad, 111 Mich. 390; Titus v. Railroad, 136 Pa. St. 618; Omaha Bottling Co. v. Theiler, 59 Neb. 257; Domers v. Marshall, 178 Mass. 9; Breig v. Railroad, 98 Mich. 222; Allison Mfg. Co. v. McCormick, 118 Pa. St. 519.]

With these fundamental principles as our guide, the question is, did the plaintiff establish his first ground of negligence, to-wit, that the defendant furnished him with an appliance of a defective and dangerous construction with which to do his work? On the part of the plaintiff, it is insisted that the testimony of his two experts Schott and Kerr established the fact that any and all emery wheels are inherently liable to break or explode and therefore he was entitled to go to the jury. It is true that these two experts testified in substance that any kind of an emery wheel was liable to break, but it was developed from the examination of these same witnesses that emery wheels were constantly in use in all the great manufacturing establishments of this country for the purpose of grinding castings and tools, and that the so-called straight emery wheel, a wheel of the character of the one which broke in this case and injured the plaintiff, was of general use in all large manufacturing establishments, at least in the vicinity of St. Louis. Witness Schott testified that he knew little or nothing about the constitutents of emery wheels, or how they were made, and when called upon to give his knowl-

edge of the liability of these wheels to break, he testified that in an experience of twenty-three years, he had known only two to break. And witness Kerr stated that in an experience of twenty-two years he had only known five to break. And the witnesses for defendant, with experiences ranging from three and four to twenty-seven years, testified, some of them, that they had never known an emery wheel to explode, and others knew one in all that time, and it was shown that in the shops of the defendant there were fifty emery wheels in operation all the time, and about 500 would be used during the year, and only one had ever broken or exploded prior to the injury to the plaintiff, so that the substance of this testimony from both sides established that occasionally at rare intervals a straight emery wheel had been known to explode. Can it be said from this testimony that this character of emery wheels broke so often or was so inherently dangerous that they can be characterized as implements inherently apt to break, or that they break with such frequency as to require the users of them to adopt a sort of guard or fender to protect the workmen in the use of them, or require the manufacturer to abandon this form of a wheel and adopt a convex wheel with convex flanges in lieu thereof? We think not. If we are not to disregard the rule announced in Minnier v. Railroad, supra, then when an employer furnishes his servant implements and appliances of ordinary character for the work according to the average habits and ordinary risks of the business in which he is engaged he has performed his duty to his servants. We think that this evidence shows without any doubt that the defendant in using this character of an emery wheel was conforming to the ordinary and usual practice of all the large manufacturing establishments in the vicinity of St. Louis and throughout the country. And the mere fact that now and then in an experience

of twenty years a witness had known of two or five explosions of these emery wheels in various parts of the country, did not establish that it was negligence on the part of the defendant to use these emery wheels in its work. So varied and so different were the methods of making these wheels, that it might well happen that some wheel of a certain make might explode and yet be no evidence of negligence on the part of defendant in using the wheels of the manufacture of which the wheel in evidence was a sample. But more than this, the negligence upon which this case is grounded is that the defendant did not use the convex wheel instead of the straight wheel. It cannot be contended under this evidence that this convex wheel was in general use prior to the injury to the plaintiff. The most that can be said of the testimony on this point is that there was some showing that a convex wheel had been invented prior to the accident and was on exhibition in some of the stores and had been seen in use in two places only. Whereas the defendant in furnishing the straight wheel was using a device in general use and one which had been in use for a long time and this being true it must be held that the defendant complied with the test in that it was exercising the ordinary care exercised by others in the same character of business. And as said in Higgins v. Fanning & Co., 195 Pa. St. 599, " 'Whatever is, according to the general, usual and ordinary course, adopted by those in the same business, is reasonably safe within the meaning of the law.' [Kehler v. Schwenk, 144 Pa. St. 348.] The test is negligence, and negligence cannot be imputed from the employment of machinery in general use. [Reese v. Hershey, 163 Pa. St. 258.]'' We think it is clear that under the evidence in this case up to the time, at least, of the injury to plaintiff, the defendant was not negligent in failing to adopt what is known as the convex wheel, as the proof was over-

whelming that in all manufacturing establishments of a similar character to that of the defendant's, this convex wheel was only in use by two of them. Accordingly, in our opinion, it was error to leave to the jury the question of negligence based on the failure of the defendant to adopt the convex wheel, even though it might have known that there was such a device at that time, as it was not bound to adopt every new appliance which might be devised for its work so long as it was using an appliance in general use by other similar establishments in the same character of business.

II. The second proposition is that the defendant, with actual knowledge that emery wheels were liable to explode, was negligent in not warning plaintiff of the danger incident to working with emery wheels. But if we are right that there was no negligence on the part of the defendant in using the said straight emery wheel then in general use, and no testimony that such wheels were so inherently liable to break up as to require defendant to take notice that they were dangerous, it cannot be said, we think, that the defendant had actual knowledge that such wheels were inherently dangerous to its employees. If we are right in holding, as we have held, that plaintiff failed to establish that the ordinary usage of the business required defendant to use a convex wheel, then defendant was guilty of no negligence in using the straight emery wheel, and no negligence in failing to warn plaintiff of the dangers incident to its use. The plaintiff's own testimony demonstrates that he was directed how to work with this machine and it is not pretended that the wheel broke on account of any misuse of the same by plaintiff. And hence the fact that plaintiff was not told that emery wheels did explode or break in some instances, in no wise contributed to

cause this particular one to break or explode. The mere failure to inform plaintiff that emery wheels will explode at times had nothing to do with causing this emery wheel to explode. And had he been told that emery wheels at long intervals had been known to explode, it could not in any manner have lessened the likelihood of explosion in this case.

III. Recurring to the expert testimony on the part of the plaintiff, it should be observed that the wheel, which exploded in this case, was what was known as the "Springfield, Ohio, Safety" pattern. The witness Schott was not asked whether he knew the ingredients of that particular make of emery wheels or whether he had ever had any experience in watching them, but on the contrary was asked the general question as to the breakability of all emery wheels, after he had testified that they were all different in construction. If this witness had known the constituents of this Springfield wheel, whether they were made like other wheels he had observed, or that he had had actual experience with Springfield wheels, it would have been competent to ask him as to the danger of explosion of such wheels. But we think that the general question asked him in regard to emery wheels generally and after he had testified that they were made in different ways and out of different ingredients, and when he had shown no knowledge of the ingredients which entered into the composition of the Springfield wheel, was improper. The defendant was not called upon to try the records on all different kinds of emery wheels. And the same objection, we think, obtains as to the testimony of the witness Kerr. He had no knowledge of the ingredients of the different wheels, nor of the manner of putting them together so as to qualify him to speak intelligently as to the durability and reliability of the different makes.

IV. Again, the plaintiff charges in his petition that the defendant knew that the said emery wheel which exploded and caused the plaintiff's injury was known by the defendant to be dangerous and yet employed plaintiff to work at and upon it. We think there was no evidence to sustain this charge that this particular emery wheel was dangerous. The only testimony in reference to this point on the part of the plaintiff was that of his expert who testified that in an experience of twenty-two years he had known two straight wheels to break or explode, but there was no evidence that the defendant had knowledge of such explosions, and on the contrary, it was shown that defendant had been using these wheels for six years and one only had exploded and that while it was being tested, and did not stand the preliminary test, which tended only to show not that this pattern of wheel was dangerous, but simply that this particular wheel, so being tested, was defective. The defendant offered several instructions embodying the principles which we have already announced and they were refused by the court. It is not necessary in our view of the case to discuss these *seriatim* as we have reached the conclusion that there was no substantial evidence of negligence upon which to submit the cause to the jury, but if there had been these instructions in the main should have been given. In our opinion there was no evidence of negligence on the part of the defendant either in using the straight wheel, from the explosion of which plaintiff was injured, or in not adopting what is known as the convex wheel, because at that time there was no evidence that this convex wheel with flanges had come into general use among manufacturing establishments in St. Louis and its vicinity. It results from what we have said that the judgment must be reversed without remanding. It is so ordered.

*Fox, P. J.,* and *Burgess, J.,* concur.