EUGENE VACCA *v.* CHRISTINE DELLA CAMERA

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued February 9—decided March 7, 1962

*John E. McNerney,* with whom, on the brief, was *Francis J. Moran,* for the appellant (defendant).

*Vincent Villano,* for the appellee (plaintiff).

MURPHY, J. The plaintiff is the son-in-law of the defendant. For a monetary consideration, he was employed by the defendant to paint her house in Hamden, the materials and equipment to be supplied by her. While he was descending a stepladder owned by her, he fell. He brought suit, alleging that the stepladder was defective, dangerous and unsafe for the use intended. The jury returned a verdict for him, and the defendant moved to set it aside and to render judgment notwithstanding the verdict in accordance with her motion for a directed verdict. The court denied the motion, and the defendant has appealed.

The jury could have found as follows: With the part-time assistance of two of the defendant's sons, the plaintiff undertook the painting of the defendant's one-story ranch house during his vacation. He was to receive $50 for his services. The defendant supplied the paint, brushes and ladders needed for the work. One of these was a five-foot stepladder. The plaintiff fell as he was descending it after working from the top step to touch up some spots on the upper corner of a window casing and the gutter above it, about ten feet from the ground. The accident occurred on July 6. The plaintiff had used the stepladder each day since June 29. When he first started to use it, he told the defendant that it was a little shaky. She cautioned him to be careful and told him to call her to hold the ladder for him when he had to climb on top of it. Until his fall, she always held the ladder when he climbed to the top.

However, when he mounted the ladder on July 6 she was not at home.

In a written statement dated August 8, the plaintiff said that he was injured when he slipped off a ladder. He further stated: The ladder was in very good condition. He had been on the top step of the ladder, reaching up to paint under the gutter, and fell as he started down. He was reaching for the step below when he lost his balance. The ladder went one way and he went the other way. No one saw him fall. One brother-in-law was working in another area at the time.

At the trial, the plaintiff admitted having read and having signed each of the three pages of the statement. Previously, he had testified on direct examination that the ladder was in good condition structurally. Then, on cross-examination, he denied that he had told the interviewer that the ladder was in very good condition. Thereafter, on redirect examination, he stated that he had told the interviewer that the ladder was in good condition structurally. The plaintiff testified also that in alighting he put his right foot on the first step below the top and then placed his left foot on the next step, and that when he was placing his right foot on the next lower step, which was the second step from the ground, the ladder started shaking and toppled over. He also said that the ladder had become more shaky as he had continued to use it.

The defendant testified that the ladder had no defects though it shook a little bit when she used it, so she always had someone hold it for her. The plaintiff did not complain to her about the ladder after he started to use it. When she asked him after the accident what had happened, he told her that he did not know, that the ladder wiggled and he fell

off it. Her son George testified that he had not heard the plaintiff complain about the ladder. A general contractor, with forty-six years' experience in building, examined and tested the ladder a month after the accident. Its condition was unchanged. He described it as the best grade of the type used in heavy construction work by mechanics, carpenters and painters. It was heavier than the usual household ladder and was braced differently. He gave a detailed description of the stepladder and submitted a sketch of it. The upper surface of each step was grooved to prevent slipping, and each step was mortised into the front side rails. The steps were held rigid by angle braces at each end and by tight wire rods wedged below them. When set up for use, the stepladder was not in any way shaky, wobbly or unsteady. No improvements could be made to it and, in the opinion of the contractor, it was reasonably safe for use in painting and for climbing on it, regardless of the weight of the user. He testified that any stepladder would tip over if the user leaned too far to the side.

Under the contract, the defendant became obligated to exercise reasonable care to provide the plaintiff with reasonably safe equipment for the use intended. *Roy* v. *Friedman Equipment Co.*, 147 Conn. 121, 123, 157 A.2d 599; *Phenning* v. *Silansky*, 144 Conn. 223, 226, 129 A.2d 224. In view of the plaintiff's concession that the stepladder was in good condition structurally, the jury must have concluded that the description of it as "shaky" was sufficient to permit a finding that it was not reasonably safe for use by the plaintiff in painting the house. Since no error has been claimed in the charge, it is presumed that it was correct and that the jury were instructed as to the meaning of the

terms "reasonable care" and "reasonably safe" as they applied to the facts here. *Facey* v. *Merkle,* 146 Conn. 129, 132, 148 A.2d 261. The verdict indicates clearly that the jury held the defendant to a higher degree of care than was required of her under the law.

Reasonable care is the care that would be exercised by an ordinarily prudent person under similar circumstances and conditions. It does not mean extraordinary care. As applied to the furnishing of tools or equipment to perform a particular task, reasonable care requires no more than that the article should be reasonably safe for the use intended. *Phenning* v. *Silansky,* supra. Generally speaking, "reasonably safe" means safe according to the usages and ordinary risks of the business in which the appliance is to be used. See *Jager* v. *First National Bank,* 125 Conn. 675, 676, 7 A.2d 919. Absolute safety is unattainable. The defendant was not an insurer of the ladder and could be held liable only for the consequences of negligence, not for the consequences of danger. *Brands* v. *St. Louis Car Co.,* 213 Mo. 698, 708, 112 S.W. 511; *Titus* v. *Bradford, B. & K.R. Co.,* 136 Pa. 618, 626, 20 A. 517. We are of the opinion that the jury misapplied the law as given to them by the court or were actuated by other motives in finding against the defendant on this very narrow issue. *Horvath* v. *Tontini,* 126 Conn. 462, 464, 11 A.2d 846. It is therefore unnecessary to consider the defendant's claim that the plaintiff was contributorily negligent as a matter of law in standing on and in reaching from the top step of the ladder to paint the gutter and window casing, without the assistance of a person on the ground holding the ladder for him. As the defendant moved for a directed verdict, she is entitled to

judgment notwithstanding the verdict. *Donch* v. *Kardos,* 149 Conn. 196, 199, 177 A.2d 801.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant notwithstanding the verdict.

In this opinion the other judges concurred.