OF THE

## STATE OF MISSOURI

AT THE

APRIL TERM, 1907.

---

*(Continued from Volume 203)*

---

## FANNIE E. ELIOT v. KANSAS CITY, FT. SCOTT & MEMPHIS RAILROAD COMPANY, Appellant.

**Division Two, May 14, 1907.**

1. **ABSTRACT: Waiver of Objections Not Mentioned.** The filing of an additional abstract to supply matters omitted from appellant's abstract is to be considered as a waiver by respondent of any objection to appellant's abstract that is not indicated in the additional abstract; and if appellant's abstract shows a bill of exceptions was duly filed and states what the record shows, that abstract is conclusive in the absence of a counter abstract. So that, where appellant filed a motion to strike out and a motion to make more definite, which motions were overruled, but no bill of exceptions was filed at that term, and the case was tried at a subsequent term and a bill of exceptions was duly filed, and appellant's abstract omits those motions, and respondent files an additional abstract setting forth only those motions, and makes no other objection to appellant's abstract, those motions will not be considered, nor was it necessary for appellant to embrace them in its abstract, but appellant's abstract as presented will be held to include the record.

2. **NEGLIGENCE: Master and Servant: Presumptions of Care and Knowledge.** Where the relation of master and servant exists,

204 SUP.—1

and the servant is injured while in the service of the master, and charges his injury to the master's negligence.in.furnishing him with defective and improperly constructed appliances, the presumption is that the master discharged his duty toward the servant by providing him with suitable instrumentalities with which to work, and if it be shown that they were defective then there is a further presumption that the servant had no notice or knowledge of that fact, and was not negligently ignorant.

3. ———: ———: **Overcoming Presumption.** It devolves upon the plaintiff to show by a preponderance of the evidence that the master failed to perform his duty to provide him suitable instrumentalities to work with, and that in consequence of such failure the servant was injured. The fact that the switchman's hand, while he was in the act of throwing the switch, was struck by the passing engine, does not of itself overcome the presumption that the defendant railroad company had discharged its duty towards him with reference both to the switch-lever and the engine, nor amount to a proof of failure of the defendant to perform its duty. It devolves upon plaintiff, in order to entitle her to recover for the death of her husband, the switchman, not only to overcome by testimony the presumption that defendant did not fail to perform its duty towards him, but that defendant was negligent as charged in the petition, that such negligence was the proximate cause of the injury, and that the injury caused his death.

4. ———: ———: **Unusual Construction.** The blow-off pipe on the engine, which struck the switchman's hand as he was in the act of throwing the switch, was located in an unusual place, being about two inches back of the pilot beam and extending down about five inches below the end of the beam, while the usual place for its location is either immediately before or behind the drive wheel. But as that unusual construction was not shown by the evidence to be either improper or defective, or the cause of the injury, it was not negligent.

5. ———: ———: ———: **Switchman: Contributory.** Where the switchman was in full charge and control of the switch, and had authority to control the engine's movement by signal and could have had it stopped by a movement of his hand, and the switch-lever, when used as it was intended to be used, and as he had a few minutes previously used it, was entirely safe and suitable, and was in no sense dangerous when the throwing of the switch was complete, and became dangerous only when pointed horizontally towards the engine, and then only because when in that position the lever-handle came within five inches of the pilot beam and within one inch of the blow-off pipe that pointed down over the pilot beam, and he undertook to throw

the switch when the engine, moving somewhat rapidly, was only six feet away, without signalling it to stop, and when the switch-lever pointed horizontally toward the engine his hand thereon was struck by the blow-off pipe, the fact that he did not have time to completely throw the switch, does not make the company liable for his injury, even though it was usual for the blow-off pipe to be constructed immediately before or behind the drive wheel. There is nothing in these facts which constitutes negligence on the part of the company, but even if there were, the accident was due to his mistake of judgment and voluntary act in attempting to throw the switch when there was not sufficient time in which to complete it, thereby making an improper use of the switch-lever and by placing his hand over the end of the lever when there was no necessity for that, and hence he was guilty of contributory negligence barring recovery.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*L. F. Parker* and *I. P. Dana* for appellant.

The court should have directed a verdict for defendant for each of the following reasons: (a) There was no proof that the death of plaintiff's husband was caused as charged in the petition, or by negligence of defendant in any respect. (b) The testimony showed that his injuries were due to his own carelessness, or at best resulted from his voluntarily taking unnecessary chances in doing his work. (c) His injuries and death were in law accidental. Plaintiff failed to overcome the presumption existing in favor of defendant that it had discharged its full duty to her husband. Wood's Master & Servant, sec. 382; Covey v. Railroad, 86 Mo. 635; O'Malley v. Railroad, 113 Mo. 319; Murray v. Railroad, 101 Mo. 236; 2 Thompson on Negligence, p. 1053, sec. 48; Gurley v. Railroad, 104 Mo. 223; Hudson v. Railroad, 101 Mo. 13; Webb's Pollock on Torts, 545. The mere fact of an injury did not overcome this presumption. Yarnell v.

Railroad, 113 Mo. 570; Murphy v. Railroad, 115 Mo. 115. There is no evidence of anything unusual, unsafe or out of the ordinary course with reference to any of defendant's appliances, beyond the mere fact that plaintiff's husband's hand was injured. Defendant was not bound to furnish any particular kind of appliances. Grattis v. Railroad, 153 Mo. 404; Cothorn v. Packing Co., 98 Mo. App. 343; Friel v. Railroad, 115 Mo. 503; Lane v. Railroad, 64 Kan. 755; Webb's Pollock on Torts, p. 11. Deceased was free to do the work in his own way, and it was his duty to choose the safest way. Defendant no more assumed the risk of his choosing a dangerous way to work with appliances which could be used safely than he assumed the risk of defendant's furnishing him with unsafe appliances. Kelley v. Lawrence, 195 Mo. 87; Bailey on Master & Servant, sec. 1123; Hurst v. Railroad, 163 Mo. 309; Hulett v. Railroad, 67 Mo. 239; Sparks v. Railroad, 31 Mo. App. 111; Railroad v. Arnold, 114 Ala. 183; Quironer v. Railroad, 111 Ga. 315; Pennsylvania Co. v. O'Shaughenessy, 122 Ind. 588; Ferguson v. Railroad, 100 Iowa 733. The injuries to deceased's hand were so unlikely to occur, so unusual and exceptional, so improbable of happening, that even if defendant was in any way negligent with regard to the arrangement of the appliances of the switch stand and the engine in that a man might be hurt under the circumstances attending the injuries to Mr. Eliot's hand, such lack of care was not, within the meaning of the law, the proximate cause of the injury. Or, to put it differently, it was not in a legal sense negligence not to take precautionary measures to prevent such an unlikely injury. Graney v. Railroad, 157 Mo. 683; Brewing Association v. Talbot, 141 Mo. 683; Hysell v. Swift, 78 Mo. App. 47; Mfg. Co. v. McCormick, 118 Pa. St. 519; Bowen v. Railroad, 95 Mo. 268; Fuchs v. St. Louis, 167 Mo. 620. Another way of expressing

the same idea and principle is that under all the testimony in this case, the injuries to plaintiff's husband's hand and his death, when the testimony is most favorably regarded for plaintiff, were accidental. Rogers v. Printing Co., 103 Mo. App. 683; Henry v. Railroad, 76 Mo. 288; Haley v. Railroad, 179 Mo. 35.

*Wm. T. Jamison* and *Walsh & Morrison* for respondent.

(1) The motion to make petition more definite and certain and to strike out a portion thereof are not properly in the record. Nickerson v. Peery, 163 Mo. 77; Newton v. Newton, 162 Mo. 173; Bank v. Finks, 40 Mo. App. 367; Ober v. Railroad, 13 Mo. App. 81; Nichols v. Stevens, 123 Mo. 119; Paving Co. v. Ullman, 137 Mo. 564. (2) Nothing is presented by appellant's abstract for the consideration of this court except the record proper. Gramp v. Dunnivant, 23 Mo. 254; Lawson v. Mills, 150 Mo. 428; Walser v. Wear, 128 Mo. 653; Clay v. Union W. P. Co., 98 S. W. 577; Reno v. Fitz Jarrell, 163 Mo. 411. (3) The death of Mr. Eliot was caused by the negligence of defendant as charged in the petition. Dean v. Railroad, 97 S. W. 918; Boyce v. Railroad, 96 S. W. 672; Harrison v. Elec. Lt. Co., 195 Mo. 606; Hoepper v. Hotel Co., 142 Mo. 388; Flanders v. Railroad, 51 Minn. 193; Murphy v. Railroad, 115 Mo. 111; Curtis v. McNair, 173 Mo. 283; Bradley v. Railroad, 138 Mo. 302; Doyle v. Trust Co. 140 Mo. 1; Halliburton v. Railroad, 58 Mo. App. 33; Settle v. Railroad, 127 Mo. 341. (4) Deceased was not guilty of contributory negligence. Browning v. Railroad, 94 S. W. 315; Murphy v. Railroad, supra; Piette v. Brewing Co., 91 Mich. 610; Brinkmeier v. Railroad, 69 Kan. 738. (5) There was no variance or failure of proof. R. S. 1899, sec. 798; Gannon v. Gas Co., 145 Mo. 511; Morrow v. Surber, 97 Mo. 155; Palmer v. Tel. Co., 91

Mo. App. 115; Anderson v. Railroad, 161 Mo. 432. And the cause of death sufficiently appears. Walsh v. Railroad, 102 Mo. 582; Lovrain v. Railroad, 57 N. Y. Super. Ct. 165; Wood v. Railroad, 181 Mo. 433. (6) The evidence shows that the injury to deceased was caused by the dangerous proximity of the blow-pipe and switch lever. Hallweg v. Telephone Co., 195 Mo. 149; Soeder v. Railroad, 100 Mo. 673; Buesching v. St. Louis Gas Lt. Co., 73 Mo. 219; Schultz v. Moon, 33 Mo. App. 329; Shore v. Bridge Co., 111 Mo. App. 278; Leeright v. Ahrens, 60 Mo. App. 118.

BURGESS, J.—Plaintiff, the widow of B. F. Eliot, sues for five thousand dollars damages for the death of her husband, who, on the 27th day of May, 1901, while in the employ of and acting as switchman for defendant, and in the performance of his duties as such, in the yards of defendant in Kansas City, was struck and injured on the back of his hand by one of defendant's engines, from the results of which injury and other "matters and things" set forth in the petition, the said B. F. Eliot, on the 17th day of July, 1901, died. The trial resulted in a verdict and judgment for five thousand dollars in favor of the plaintiff. In due time defendant filed motions for a new trial and in arrest, which were overruled, and defendant appealed.

The suit was originally instituted against the Kansas City, Ft. Scott and Memphis Railroad Company, appellant herein, and the St. Louis and San Francisco Railroad Company, but was subsequently dismissed as to the latter.

The petition alleges the incorporation of the defendant and that on May 27, 1901, Benjamin F. Eliot, the husband of plaintiff, was in the employ of the defendant, and in such employ was acting as a switchman at a point on the tracks of the defendant near Twenty-fifth street and State Line in Kansas City, Mis-

souri; that while in the discharge of his duties as such
switchman upon said day, plaintiff's husband, while ad-
justing and operating a switch at said Twenty-fifth
street and State Line, and while pushing or turning
over the lever to operate said switch, which was neces-
sary to enable an approaching engine belonging to the
defendant to switch upon and run over and upon the
proper track, and while said engine was being run, op-
erated and controlled by the engineer thereof, who was
an employee of defendant, his hand while still grasp-
ing said switch lever was struck by said engine, and
thereby severely wounded, lacerated, torn and bruised
at and about a point on the back thereof, immediately
above the joint where the index finger is joined to the
hand, and thereby the said index finger was almost sev-
ered from the said hand.

"Plaintiff further states that the said injury to the
hand of the said Eliot was caused as aforesaid by the
carelessness and negligence of the defendant, the Kan-
sas City, Fort Scott & Memphis Railroad Company, in
so constructing and arranging the said switch lever and
the said engine and its attachments that when operat-
ed as aforesaid, they came so close together as to cause
the injury as above stated.

"Plaintiff states that the said Benjamin F. Eliot
had a long and continuous illness caused from the
aforesaid injury, extending from the time of the said
accident until on or about the 17th day of July, A. D.
1901, from which injury and illness, his life was in
imminent peril and danger, and as a result of such in-
jury it became necessary to perform a surgical oper-
ation upon the said hand in an effort to heal and cure
the said injury, and in order to save his life, and as
a necessary incident to the performing of the said op-
eration, the physicians and surgeons in attendance
upon him, administered to him an anaesthetic, and
while under the influence of said anaesthetic, adminis-

tered for the purpose aforesaid, and before the said operation could be completed the said Eliot died, his death being caused on account of the matters and things hereinbefore set forth.''

It was further alleged that the St. Louis & San Francisco Railroad Company was liable for the debts of the Kansas City, Fort Scott & Memphis Railroad Company and judgment was prayed against both defendants in the sum of five thousand dollars.

The last-named defendant demurred on the ground that it was not a necessary party to the suit, and that the petition did not state facts sufficient to constitute a cause of action. This demurrer was overruled by the court and the defendant saved an exception to the ruling.

The answer of defendant consisted of, first, a general denial; second, a general plea of contributory negligence; third, a general plea of assumption of risk.

Plaintiff's reply was a general denial of the allegations of the answer.

The only testimony in the case was that introduced by plaintiff, the defendant not offering any, and the only witness who was present at the time and place of the accident was H. P. Wells, foreman on the switch engine which, it is alleged, struck and injured Eliot. Wells testified by deposition, which was read on behalf of plaintiff at the trial.

The deceased was an experienced switchman, forty-five years of age, and when hurt he was attempting to ''throw a switch'' in front of an engine which was switching cars, and while so doing his hand in some way was caught between some part of the engine and the switch lever and thereby lacerated and injured.

According to Wells's testimony he was sitting on the left-hand side of the cab of the engine, going north, at the time Eliot was hurt. The switch stand was on the west side of the tracks. South of the switch there

was only one track, but north thereof there were two tracks, with either of which the south track could be connected by properly moving the switch lever, the movement being called "throwing the switch." The westerly track led to the main line, while the easterly track was called the Milwaukee connection. The switch engine had been employed in the yards and in the vicinity of the said switch, with the same crew, all the forenoon. Immediately before the accident the engine had gone over this switch upon the Milwaukee connection and coupled up to some cars standing thereon, and then backed over the same switch until the engine and cars were south thereof. The engine then started rapidly north, and when it was close to the switch the cars were uncoupled and they proceeded with the impetus given them over the switch and to the west track. It would appear that when the cars, which were moving rapidly, were ahead of the engine about half a car length, about eighteen feet, and before the engine had yet reached the switch, Eliot attempted to throw the switch between the engine and said cars, the object being to let the engine in on the Milwaukee connection without stopping. At the time he attempted to do this the engine was about six feet south of him, and still moving rapidly. Before the operation of moving the switch handle or lever was completed, and while said lever was pointing in a horizontal direction towards the track, the engine passed and some projecting attachment on the engine struck the hand of Eliot which had hold of the end of the lever. Eliot held up his bleeding hand, and at a signal from Fireman Wells the engine was stopped. The hand was injured on the back, the tendons of the index finger above the knuckle being torn apart. There was a blow-off pipe on the engine just behind the pilot beam and in a position somewhat lower than the beam. Witness Wells measured the space between the blow-off pipe and the

switch lever, when each was opposite the other, and found the space was about an inch, which he said was not sufficient for a man's hand. He was asked if the way Eliot threw the switch was not the usual and ordinary way under such circumstances, and he stated that he had seen it done before, and whenever there was an occasion of that kind. Witness John W. O'Neil, an experienced switchman, testified that the operation of switching cars from one track to another and "throwing the switch" was about the same in all yards. He said that he knew the switch stand in question, having worked in defendant's yards prior to May 27, 1901. On cross-examination he stated there would be room enough to throw the switch although the engine was only six feet away from the switch stand at the time, as it took but a second to do so; that the switch is not completed until the lever is down, but that an engine can go over the switch before it is quite down.

After the accident Eliot was taken home in an ambulance, and the same afternoon he returned to the railroad yards to get some things which he had left there. He stayed at home some ten days, and then went to the hospital, where he remained about four weeks, coming home occasionally. At the end of that period he went home, and remained there until the morning of July 17. The evening before, his family physician, Dr. Van Eman, was at his house examining his hand, and next morning Eliot went to the hospital to meet him and other physicians who were to hold a consultation there. No witness saw Eliot alive after he left home that morning; nor did the plaintiff ever see him again, even after he was dead, her testimony in that regard being "it was just best that I should not see him."

Dr. Moses T. Runnels testified that he made a superficial examination of the body of Eliot on the afternoon of July 18, 1901, in the presence of Dr. Van Eman,

and a doctor from the Ft. Scott & Memphis Hospital, and some friends of the deceased. The purpose of the physicians and surgeons was to make a post-mortem examination, but the body was in such a state of decomposition at the time that it was thought inadvisable to enter into it. He stated that it was very evident that there had been a decomposition or state of gangrene in the body before the man died, caused by blood poisoning. The right hand and arm indicated that they were in a state of decomposition before he died, the hand being black, and the arm, extending clear to the shoulder, being black and very much swollen. Over the metacarpal bone of the index finger, about an inch above the knuckle, there was a cut or open place in the hand, from which both ends of the severed tendon protruded. The glands under the arm were very large, showing that there had been infection and blood poison; that the condition was in itself a sufficient cause of death; Dr. Runnels stated that where a man was affected with blood poisoning to the extent that Eliot apparently was, the only thing to do would be to operate upon him, and that such operation would necessitate the use of chloroform or ether.

The testimony further showed that Dr. Van Eman was an eminent physician and that he died before the trial of this case. There was no testimony as to where deceased was between the morning of July 17 and the afternoon of July 18, 1901, what he did or what was done to him, nor was there any testimony offered as to where or when or under what circumstances he died.

Not being satisfied with appellant's abstract, plaintiff filed an additional abstract which has reference solely to the motions filed by defendant to strike out, and to make more definite and certain her petition, which motions were overruled by the court, but no bill of exceptions was filed during the term at which these rulings were made, and no point is made by defendant

upon the action of the court in overruling said motions for that reason; besides, they were expressly abandoned by the appellant on this appeal. They are, therefore, not before us for consideration, and it was wholly unnecessary for defendant to mention them in its abstract. As was said in Lumber Company v. Knights of Pythias, 157 Mo. l. c. 379, "The statute of this State, section 2253, Revised Statutes 1889, requires appellant to file a certified copy of the judgment and the order granting the appeal, and then devolves upon him the duty to make an abstract of the record and deliver a copy to the opposite party, in the time required by the rules of the court. The abstract, we have consistently ruled, does not require the certificate of the clerk nor the various matters of record in full. [Ricketts v. Hart, 150 Mo. 64; McDonald & Co. v. Hoover, 142 Mo. 484.] The purpose of the statute was to avoid unnecessary cost, and to encourage concise statements of the record. Moreover, it provided within itself a method to prevent imposition on this court by requiring respondent, if dissatisfied, to file an additional abstract within a certain time, and if the parties could not concur as to the record, the clerk should certify to this court so much of the record as is in dispute. When a bill of exceptions is signed and filed, the matter therein becomes matter of record. When, therefore, as in this case, the abstract shows the bill was duly filed, and then proceeds to state what the record shows, it is conclusive, unless the respondent files a counter abstract as required by our rules. No such thing has been done in this case. The abstract is unusually full and complete, and is not open to the attack made upon it for the first time in the brief."

Plaintiff, in filing an additional abstract to supply matters omitted in defendant's abstract, must be considered as having waived any other objection to it than as indicated in the additional abstract; and as the

abstract shows that the bill of exceptions was duly filed and also states what the record shows, it is conclusive, in the absence of a counter abstract showing to the contrary. [Lumber Company v. Knights of Pythias, supra; Martin v. Castle, 182 Mo. 216.]

In Flannery v. Railroad, 97 Mo. 192, it is held that, when a respondent or defendant in error does not file an additional abstract, the appellate court will accept that of appellant or plaintiff in error as containing a correct statement of the record, and will not go behind the abstract.

In McDonald & Co. v. Hoover, 142 Mo. 484, it is held that an abstract like the one in question is conclusively presumed to be true unless challenged by a counter abstract, as provided by section 813, Revised Statutes 1889, and "that nothing more is required in an abstract than a recital of the substance of the various entries. In this case appellants' abstract recites the leave to file and the several extensions, and the time of granting each, and the length of time and the filing thereof. This is all that the statute requires."

The same rule is announced in Ricketts v. Hart, 150 Mo. 64. So in the case at bar; appellant's abstract recites the leave to file and the several extensions, and the time of granting each, as well as the length of time and the filing thereof. This is all that the statute requires.

Defendant introduced no testimony, but at the close of all the evidence introduced by plaintiff, defendant demurred thereto for the reason, as stated, that plaintiff had not shown facts sufficient to constitute a cause of action against the defendant. The demurrer was overruled, and the defendant excepted.

In cases of this character the presumption is that the master has discharged his duty towards his employee or servant by providing him with suitable instrumentalities with which to work, and if it be

shown that they were defective, then there is a further presumption that the employee had no notice or knowledge of this fact, and was not negligently ignorant of it. [4 Thompson's Commentaries on the Law of Negligence (2 Ed.), sec. 3864.]

The master is entitled to the benefit of the presumption that he has performed his duty, until the contrary appears (Boyd v. Blumenthal & Co., 3 Penn. (Delaware) 564, and it devolved upon the plaintiff in this case to show by the preponderance of the evidence that defendant had failed to perform its duty in this respect, in consequence of which her husband sustained injuries from which he died. [Pennsylvania Company v. Whitcomb, 111 Ind. 212; Pellerin v. International Paper Co., 96 Me. 388; Cahill v. Hilton, 106 N. Y. 512; 4 Thomp. Com. Law of Negligence (2 Ed.), sec. 3866.] In Cahill v. Hilton, supra, it is said: "A master's liability to his servant for injuries received in the course of his employment is based upon the personal negligence of his employer; and the evidence must establish personal fault on his part, or what is equivalent thereto, to justify a verdict, and he is entitled to the benefit of the presumption that he has performed his duty until the contrary appears. [Wood on Master and Servant, secs. 345, 346.]" Moreover, in order to entitle plaintiff to recover, it devolved upon her to not only overcome by testimony the presumption to be indulged in favor of defendant that it performed its duty towards plaintiff's husband, but that defendant was negligent as charged in the petition, that such negligence was the proximate cause of the injury, and that said injury caused the death of her husband as alleged. And the fact that the hand of plaintiff's husband was hurt while in the act of throwing the switch lever as the engine was passing upon the track (even if it was struck by the engine, as charged in the petition), did not of itself overcome the presumption that

defendant had discharged its duty towards him with reference both to the switch lever and engine, nor amount to proof of a failure by defendant to perform its duty. In Jones v. Railroad, 178 Mo. l. c. 543, Judge VALLIANT, speaking for the court, said: "Proof, therefore, of the mere fact that the servant was injured in the master's service is not sufficient to make out a prima-facie case for the plaintiff," citing Yarnell v. Railroad, 113 Mo. 570; Murphy v. Railroad, 115 Mo. 111. See also, Hornstein v. Railroad, 195 Mo. 440.

While in this case the blow-pipe on the engine, which the evidence tends to show contributed to the injury, was located in an unusual place, being about two inches back of the pilot beam and extending down about five inches below the end of the beam, while the customary and usual place for the location of such pipe is either immediately before or behind the drive wheel, there was no evidence tending to show that it was of improper or defective construction, or that it was the direct cause of the injury. Deceased had not completed the movement of throwing the switch at the time of the accident. In order to throw the switch back from the westerly track and connect with the other track, or Milwaukee connection, it was necessary for the switchman to raise the switch lever from a vertical position to a horizontal position, turn it in a horizontal plane from the south to the east side of the stand, and then push the handle or lever down to a vertical position and into a notch on the east side; but at the time the front part of the engine crossed the switch, the switch lever was pointing horizontally toward the engine instead of being pushed down to a vertical position, as it would have been if the movement of throwing the switch had been completed. The space between the extreme end of the switch lever and the blow-pipe of the engine was about an inch in this case, but had the movement of throwing the switch been completed and the lever in its

proper position, the space between the lever and the blow-pipe would have been about fifteen inches, or the length of the said lever. While there was no evidence that it was absolutely necessary to have the lever down in the notch before the engine could go over the switch in safety, that was the safest and best way in order to allow the engine to pass. There was nothing to show that the blow-pipe on the engine was located in an unusual place or projected further than it should. It is obvious that the height above the level of a rail of the projecting end of a switch lever would vary with the location of the switch stand and the grade of the ground, so that while the blow-pipe on an engine might come opposite the end of one switch lever, as it pointed toward the track, it might never come opposite another. They have no connection with each other in any case, for when the lever was where it should be as an engine passed it was in a vertical position and hung close to the switch stand.

The testimony showed that the deceased was in full charge and control of the switch at the time of the accident, and that he had authority to control the engine's movements by signal at any time, so that he could, by a motion of his hand, have had it stopped or slowed down. He had thrown the switch and turned the lever a few minutes before when the engine and cars moved south, and had thrown the lever down into the notch on the side of the stand, as was necessary before the act was completed and before it was naturally safe for the engine or cars to pass over. When he attempted to throw the switch this time the engine, moving somewhat rapidly, was only six feet away. The fireman testified that he thought they were not going to make the switch, and he gave the engineer a signal to stop. The engineer then stopped the engine, but not until a portion of it had passed the switch.

It is clearly shown by the evidence that Eliot's

hand was injured because he had not completed the throwing of the switch, which was necessary for his safety and that of the engine and men on it, before the engine reached the connection of the tracks, and that the switch lever, when in proper position, cleared all parts of moving cars and engines by a safe margin. If it had not there would have been a good claim of negligence against defendant. With the lever extended, which was an improper position in which to hold it, and one for which it was never intended at the time the engine and cars were passing, the lever handle came close to the whole engine, the evidence showing that in this position it was about five inches from the pilot beam, and about an inch from the blow-pipe; it might have been equally near other parts of the engine. It was obvious that the switch lever, when so extended towards the track, came so near an engine or cars moving past as to plainly warn a man not to get any part of his body between them. It was a clear day, about noon, and the entire situation was plainly visible. Eliot had thrown the switch at least once just before this occurrence; he had an appliance which when used as it was intended to be used, and as he had used it before, was perfectly safe and suitable; he was master of the situation, and could use it that way if he chose. So much is indisputable. True, Eliot's hand was hurt, and apparently by coming in contact with some part of the engine; but the cause of the injury was his voluntary attempt to do something which there was not sufficient time for him to complete, thereby making an improper use of the lever. Is it just that the employer should bear the result of his act, which would appear to have been a mistake of judgment on his part?

The grounds of negligence alleged in the petition are the carelessness and negligence of the defendant,

the Kansas City, Ft. Scott & Memphis Railroad Company, in so constructing and arranging the said switch lever and the said engine and its attachments, that when operated as aforesaid, they came so close together as to cause the injury. There was no evidence tending to show that the switch lever was not of proper construction, but there was evidence tending to show that the blow-off pipe on the engine was not in the usual place of such pipes, and that it extended down too low, in consequence of which and the failure of deceased to throw the switch before the engine reached it, the blow-off pipe came in contact with his hand at the end of the lever, causing the injury to deceased. Eliot, however, was free to act as he chose. By a motion of his hand he could have had the engine slowed up or stopped, and thus have avoided the injury; but of his own volition he undertook to lift the lever and swing it around towards the track, when the engine was too close for him to complete or effect his object. Had he taken more time, as he might have done, and signaled the engine to stop or slow up, or had he not extended his hand beyond the end of the switch lever, he would not have been hurt.

It is obvious, from the facts, that the injury to the hand of deceased was not the result of any negligence on the part of the defendant, but of his own carelessness in attempting to throw the switch under the circumstances, and in placing his hand over the end of the lever when there was no necessity therefor.

Plaintiff cites and relies upon a number of decisions of this and other courts, among which may be cited Flanders v. Railroad, 51 Minn. 193; Murphy v. Railroad, 115 Mo. 111; Charlton v. Railroad, 200 Mo. 413, and kindred cases, which hold that when obstacles are placed, or permitted to remain, so near a railroad track that servants of the road while in the discharge of their duties come in contact with them and are in-

jured, the railroad company will be liable therefor. But the case at bar is not of that character. In none of those cases had the injured servant control of the movement of the engine or cars, or of the thing which caused the injury, while in this case the servant had such control, and especially of the switch lever. It is not alleged that the switch stand was so near the track as to render it dangerous to employees, but the gravamen of the complaint is defendant's negligence in so constructing and arranging the said switch lever and the engine and its attachments, that when operated they came so close together as to cause the injury.

But even if defendant was guilty of negligence in constructing and arranging said switch lever, engine and attachments, which we by no means concede, the deceased was unquestionably guilty of carelessness and negligence in manipulating the lever under the circumstances. We find that the negligence of deceased contributed directly to his injury, which precludes recovery by plaintiff in this action. The judgment is therefore reversed. All concur.