HENRY E. CURTRIGHT, Appellant, v. ROBERT RUEHMANN et al., Respondents.

St. Louis Court of Appeals, March 3, 1914.

1. MASTER AND SERVANT: Maintenance of Iron Clipping Stand: Injury to Servant. The maintenance of an iron clipping stand, where pieces of iron were cut up by means of an anvil, chisel and sledge, in the prosecution of which work, pieces of metal would frequently fly around, does not, of itself, constitute negligence, and the only actionable negligence with respect to the prevention of injury of employees from such flying pieces of iron would consist in failing to provide screens or guards, or to isolate the clipping stand from the workmen engaged in other work.

2. ————: ————: ————: Evidence: Opinion Evidence. In an action for injuries sustained by an employee by a piece of iron which flew from an iron clipping stand, prosecuted on the theory that defendant was negligent in failing to provide screens or barriers around the stand, evidence of a nonexpert witness, that screens or barriers could have been erected on two sides of the stand without interfering with the work and that such protection was all that was necessary, because the chips most always flew sideways, was admissible; such evidence falling within the exception to the general rule that nonexpert witnesses must state facts and not give their opinions.

3. ————: Injury to Servant: Presumption Respecting Master's Performance of Duty. While a master, in an action for injuries to a servant, is entitled to the presumption that he has performed his duty, until the contrary appears, such presumption merely casts the burden on plaintiff to show negligence, and does not raise a further presumption that the master was conducting his business at the time of the accident in the usual and customary manner.

4. ————: ————: ————. While an injured servant must show prima facie the nonfulfillment of some duty of the master, in order to recover, he need not prove that the manner of conducting the business at the time of the injury was not in accordance with the usual custom, but, having proved some negligence of the master in failing to furnish a safe place to work, or facts reasonably justifying an inference of the master's neglect in that regard, the general presumption that the master

Curtright v. Ruehmann.

had performed his duty is overcome and a prima facie case established.

5. ————: ————: **Defenses: Method of Work.** In an action for injuries to a servant, a verdict may not be directed for defendant on the theory that defendant cannot be charged with negligence in conducting his business in the usual and customary manner, where nothing was developed in plaintiff's case as to what was the customary and usual manner with respect to the conduct of such a business.

6. ————: ————: **Maintenance of Iron Clipping Stand: Sufficiency of Evidence.** In an action for injuries to a servant by being struck by a flying piece of metal from an iron clipping stand, *held* that whether defendant was negligent in failing to erect screens or barriers on two sides of the stand to protect the workmen from flying iron, was for the jury.

> *Held*, by REYNOLDS, P. J., dissenting, that there was no substantial evidence tending to show that the presence of screens on the sides of the stand would have prevented the accident, and hence the failure to install the same was not shown to have been the proximate cause of the accident.

7. ————: **Duty of Master: Safe Place to Work.** A master is not an insurer against danger to the servant, and is not required to take unusual and extraordinary precautions with respect to the place in which the servant is required to work, nor to adopt the safest and best methods of prosecuting the work, yet he is bound to adopt a method that is reasonably safe and to use ordinary care to furnish a reasonably safe place for his servants to work, and he is required to adopt such precautions to prevent injuries as a reasonably prudent man would have anticipated was likely to befall employees by reason of the manner in which the work is conducted.

8. ————: ————: ————. In order to convict the master of negligence in failing to provide his servant with a safe place in which to work, it is not essential that he could have anticipated that the servant would be injured precisely as he was, but it is sufficient if, under all the circumstances, he could have anticipated that some injury was likely to occur by reason of the manner in which he conducted his business, provided the danger could have been avoided by the exercise of ordinary care.

9. **TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision.** In determining whether or not a verdict should be directed for defendant, the evidence is to be viewed in the light most favora-

181 App. 35

Curtright v. Ruehmann.

ble to plaintiff, giving him the benefit of every reasonable inference that may be drawn in his favor.

10. MASTER AND SERVANT: Injury to Servant: Maintenance of Iron Clipping Stand: Assumption of Risk. A servant assumes only those perils and hazards that are incident to the business, after the complete performance by the master of the duty cast upon him; so that, a servant who was injured by being struck by a flying piece of metal from an iron clipping stand did not assume the risk of the master's negligence in failing to take reasonable precautions to prevent such injuries by the erection of suitable screens or barriers.

Held, by REYNOLDS, P. J., dissenting, that plaintiff having entered the services of defendant with full knowledge that it was a common thing for chips to fly from the pieces of iron that were being cut, assumed the risk of injury therefrom.

11. ————: ————: Contributory Negligence: Knowledge of Danger. Mere knowledge by a servant that some danger exists in the place in which he is required to work would not necessarily defeat an action by him for injuries received therefrom, for unless the danger is so obvious and glaring and so far threatens immediate injury, that a man of ordinary prudence would not encounter it, he is not guilty of contributory negligence as a matter of law, in continuing to work there.

12. ————: ————: Maintenance of Iron Clipping Stand: Contributory Negligence. In an action for injuries to a servant by being struck by a flying piece of metal from an iron clipping stand, held that although plaintiff had knowledge that there was some danger to be apprehended from flying missiles, yet in view of the fact that it was not unreasonable for him to suppose that he could perform his work and escape injury, by the exercise of care and caution, he was not guilty of contributory negligence as a matter of law.

13. ————: ————: ————: Negligence of Fellow Servant: Proximate Cause. Where plaintiff, an employee in a junk shed, was injured by being struck by a piece of metal flying from an iron clipping stand, evidence that the direction in which the chips or pieces would fly from the stand depended considerably on the way in which the cutting chisel was placed and held by those engaged in the act of cutting, did not show that the proximate cause of plaintiff's injury was the negligence of fellow servants engaged in cutting, rather than the failure of defendant to provide suitable screens about the stand to prevent the chips from flying.

Appeal from Cape Girardeau Court Common Pleas.—
Hon. R. G. Ranney, Judge.

Curtright v. Ruehmann.

REVERSED AND REMANDED. CAUSE CERTIFIED TO SUPREME COURT.

*Frank Kelly* for appellant.

(1) Plaintiff's grounds of negligence is that the defendants (1st) erected, kept and maintained the clipping blocks in such close proximity to the employees and caused the chipping to be done so close to them that their place of work was not reasonably safe; (2nd) that defendants failed, neglected to erect any guards, fenders or barriers to arrest the flying pieces of iron. If there was any negligence at all on either of the above charges, however slight, it was a case for the jury and not for the court. Steube v. Iron & Foundry Co., 85 Mo. App. 640; Booth v. Kansas City & Ind. Air Line Railway, 76 Mo. App. 516; Chouquette v. So. Elec. Ry. Co., 80 Mo. App. 515. (2) In determining whether plaintiff has made a case entitling him to go to the jury, the appellate court must give him the benefit of the testimony most favorable to him, and allow every reasonable inference in his favor. Hurst v. Mining Co., 160 Mo. App. 53; Morgan v. Mining Co., 160 Mo. App. 99; Holman v. Iron Co., 152 Mo. App. 672. (3) Putting up a simple screen would have arrested the flying particles of iron and saved the plaintiff the injury, and if this could be done it was negligence to fail to erect them. Thein v. Brecht Buthers Supply Co., 116 Mo. App. 1; Curtis v. McNair, 173 Mo. 270. (4) Much emphasis was laid on the fact that Hersinger, who testified a barrier would not have interfered with the chipping, was not an expert. It was not a question which admitted of expert evidence. Edwards v. Barber Asphalt Paving Co., 92 Mo. App. 221; McAnany v. Henrici, 238 Mo. 103.

*Watts, Gentry & Lee* for respondents.

(1) The court did not err in giving a peremptory instruction to find for defendants, and the judgment of the court should be affirmed. . There was no negligence shown on the part of the defendants. The master is not obliged to conduct his business according to the newest possible method nor to adopt the latest appliances invented, but not yet put into general use, nor to invent appliances not yet invented for the protection of his servants. If he conducts his business in the usual manner that is all that can be required of him. Chrismer v. Bell Telephone Co., 194 Mo. 208; Minnier v. Railroad, 167 Mo. 119; Wilkinson v. Andriano Bottling Co., 154 Mo. App. 563; Brands v. St. Louis Car Co., 213 Mo. 698; Coin v. Lounge Co., 222 Mo. 488; Sutherland v. Garretson, Greason Lumber Co., 149 Mo. App. 338. (2) The master is presumed to have done his duty—presumed to have exercised ordinary care, which is such care as reasonably prudent men engaged in the same business usually exercise. Hence it was not incumbent upon defendants to show that they conducted their business as reasonably prudent men engaged in such business conduct such business, but the burden was upon the plaintiff to show a failure on the part of defendants to conduct their business as reasonably prudent men usually conduct such business. Plaintiff having failed to offer any evidence on that subject the court will presume that the business was conducted in a reasonably careful manner and in accordance with the custom of reasonably prudent men engaged in such business. Yarnell v. Railroad, 113 Mo. 579; Lenox v. Harrison, 88 Mo. 491; Glasscock v. D. G. Co., 106 Mo. 664; Elliott v. Railroad, 204 Mo. 14. (3) If negligence on the part of anybody caused plaintiff to be hurt, it was negligence of his fellow servants who were engaged in chipping a piece of steel and who caused it to fly and strike plaintiff on the head. The

evidence offered by the plaintiff himself showed that the man who held the chisel could have controlled the direction in which flying particles would go. He should have held the chisel so as to throw the particles in some other direction rather than toward the plaintiff. There can be no sort of doubt but that the plaintiff and the men working at the clipping block were fellow-servants. (4) There was no evidence whatever tending to show that any practical device had ever been invented which could be used to protect plaintiff from flying missiles without interfering with the work and without endangering the men engaged in the chipping. It is true that a nonexpert witness testified that a screen would not have interfered with the work, but his testimony should not be considered because it was improperly admitted. He knew nothing whatever about such appliances. If it was a matter for expert testimony he was incompetent because he showed he was not an expert, and if it was not a matter for expert testimony the matter should have been left to the jury without presenting the opinion of this nonexpert witness. McAnany v. Henrici, 238 Mo. 112.

ALLEN, J.—This is an action for personal injuries sustained by plaintiff while in the employ of defendants as their servant. The trial court, at the close of plaintiff's case, gave a peremptory instruction, at defendants' request, directing a verdict for defendants. Pursuant to such instruction a verdict was returned accordingly, and after unsuccessfully moving for a new trial, the plaintiff appealed to this court.

Defendants are engaged in the "junk" business in the city of Cape Girardeau. At the time here in question their business was conducted in a large shed, where parts of old machinery were separated, old iron cut up, etc., in preparing the same for shipping. In prosecuting this work, defendants, among other things, had three "clipping stands," each consisting of a large

piece of metal used as an anvil, at which two men worked, one holding a chisel to which was attached a handle, and the other wielding a large sledge hammer. The evidence shows that in the process of thus cutting up pieces of iron, with chisel and sledge, chips or pieces of such metal would frequently fly into various parts of the shed.

Plaintiff, it seems, had been in defendant's employ, working in and about this shed, for some weeks; and had worked there before, "off and on," for perhaps five or six months in all. Sometimes he worked at a clipping stand, and sometimes he did other work. When injured he was engaged in carrying scrap iron to a machine called the "cutting machine," and passing back and forth through the shed. At the time, two other employees of defendants were working at a clipping stand, cutting a shaft of some kind, with chisel and sledge, in the manner above described. While plaintiff was thus passing through the shed, some considerable distance from the clipping stand, a piece of iron flew from the latter striking him and cutting a gash in his head. The wound appears not to have been in itself an extremely serious one, but it seems that it became infected thereafter, with serious consequences.

Plaintiff's cause of action proceeds upon the theory of negligence on the part of the defendants in failing to furnish plaintiff with a reasonably safe place to work. The alleged negligence of defendants upon which the action is founded consists in maintaining clipping stands in close proximity to employees engaged in other work in the shed, and in failing to erect "guards, fenders or barriers to arrest and keep said pieces, parts, chunks or slugs of iron from flying about and striking anywhere and everywhere among the employees, which should have been and could have been done, and said place thereby rendered reasonably safe." The answer is a general denial.

In conducting defendants' business it was neces-
sary to cut up or break old pieces of machinery, shafts,
etc., and in doing this with chisel and sledge, chips or
pieces of iron would necessarily fly from the clipping
stands. In this connection it may be further said that
there was testimony to the effect that in doing this
work the manner of holding or placing the chisel had
something to do with the direction in which the chips
would fly. The latter, it seems, could be controlled, to
some extent, by the men working at the clipping stand.

The piece of iron which flew and struck plaintiff
was a portion of a band, or collar, which was being
cut from about a shaft. It appears that the blow which
severed it caused one part of it to fly; that the latter
struck plaintiff, cutting his head, and, glancing off, con-
tinued on its way and struck the wall just above the
cutting machine, cutting a deep gash in the wall. That
the flying piece first struck plaintiff and then the wall,
is to be inferred from the testimony of the witnesses
Hersinger and Davie, the men working at the clip-
ping stand. The latter said: "I remember just about
when the particular band came off; part of that piece
of iron went whistling away across the shed, some-
where the way Mr. Curtright was walking; I did not
see it to be sure; but I heard it strike; and it sounded
to me like it struck something first; it struck the wall
right over the machine, and *we looked after he got hurt,
and heard the report of the iron hit the wall.* We went
and looked and it cut a deep gash in the wall." Her-
singer said: "I heard it strike, . . . I don't re-
member that I heard it hit him but I heard it strike
something. I don't know whether I heard it strike the
partition wall of the motor shed *after the first strike*
—I heard it strike something but I don't know whether
it was the wall or his head. I do not remember seeing
the piece that flew."

I.  It would seem that the use of clipping stands, in the shed in question, in the prosecution of defendants' business, would not of itself constitute negligence on defendants' part; and that the only actionable negligence, if any, with which defendants can be here chargeable, must consist in their failure to provide screens or guards in connection with such clipping stands, or to in some manner isolate them from the workmen engaged in performing other work, for the purpose of preventing injury to employees by flying chips or pieces of metal. On this question a witness for plaintiff, who was working at the clipping stand when plaintiff was injured, testified that screens or barriers could have been erected about two sides of the clipping stand in question, without interfering with the prosecution of the work; that such a protection was all that was necessary, because the chips or pieces of iron "hardly ever flew far from the striker, toward the one that held the chisel or toward the striker. They mostly flew sideways."

II.  Respondents excepted to the action of the court in admitting the testimony of this witness, and now urge that the same was wholly incompetent, for the reason that the witness was not an expert. And in support of this contention we are referred to McAnany v. Henrici, 238 Mo. 103, 141 S. W. 633. But we think that case is not authority for respondent's position. There the well established rule was reiterated that expert testimony is not admissible unless it is clear that the jurors themselves, for want of experience or knowledge of the subject, are incompetent to draw correct conclusions from the facts proved. And this was with reference to the testimony of experts who had been permitted to testify, from an examination thereof subsequently made by them, that a molding which fell and injured the plaintiff must have been in a loose and unsafe condition for some months or years prior

to its fall, and that there must have been a crack or opening between such molding and the building to which it was attached, of such dimensions that the same could have been seen by the defendants, by the exercise of ordinary care. The testimony here objected to was not of such character. And it appears to fall within the exception to the general rule that nonexpert witnesses must state facts and not give their opinions. [See Standley v. Railroad, 121 Mo. App. l. c. 543, 97 S. W. 244; McGinnis v. Printing Co., 122 Mo. l. c. 236, 99 S. W. 4; Miniea v. Cooperage Co., 175 Mo. App. 91, 157 S. W. 1006.]

III. Respondents rely in great measure upon the proposition that they cannot be charged with negligence in conducting their business in the usual and customary manner. [See Chrismer v. Bell Tel. Co., 194 Mo. 189, 92 S. W. 378; Brands v. St. Louis Car Co., 213 Mo. 698, 112 S. W. 511; Sager v. Mining Co., — Mo. App. — , 162 S. W. 762.] And though there was no evidence that they were in fact so conducting their business, respondents urge that such must be the presumption, for they are presumed to have been exercising ordinary care and to have discharged their duty toward plaintiff, in the absence of a showing to the contrary.

But we are not persuaded that any presumption obtains to the effect that defendants were conducting their business in the manner in which such business is usually and ordinarily prosecuted by others, under like circumstances. It is true that the master is entitled to the benefit of the general presumption that he has performed his duty, until the contrary appears. And the burden is upon the servant to establish the nonfulfillment or nonperformance of some duty or obligation owing to him by the master. [See Eliot v. Railroad, 204 Mo. l. c. 14, 102 S. W. 532; Glasscock v. Dry Goods Co., 106 Mo. App. l. c. 663, 80 S. W. 364; Yarnell v.

Railway Company, 113 Mo. 570, 21 S. W. 1; Dowell v. Guthrie, 116 Mo. 646, 22 S. W. 893.] That such presumption is indulged there can be no doubt. But it is, in truth, nothing more than the usual presumption which obtains, in the absence of any showing to the contrary, that one is exercising ordinary care. Its office is merely to cast the aforesaid burden upon the plaintiff, the onus of which he must necessarily bear.

It devolves upon plaintiff, as a matter of course, to establish some act of negligence on the part of defendants. But if he adduces proof of some negligence on their part with respect to furnishing him a reasonably safe place to work, or facts reasonably justifying an inference of neglect on defendants' part in this respect, he thereby overcomes the general presumption obtaining in defendants' favor. The real question in this connection, we take it, is whether there was here shown any evidence of negligence on the part of the defendants with respect to furnishing plaintiff a reasonably safe place to work. Plaintiff must show, prima facie, the non-fulfillment of some duty on the part of defendants; but it is not incumbent upon him to prove the negative proposition, to-wit, that the manner of conducting defendants' business was not in accordance with the usual and established custom. [See Sager v. Mining Co., — Mo. App. — , 162 S. W. l. c. 767.]

Touching this question it is said: "The qualification of the doctrine, viz., that common usage is a defense, as a matter of law, only where the evidence that there is such a usage is clear and undisputed, and that if the evidence tending to establish the master's claim in this regard is conflicting, or of such a nature that more than one deduction from it may be reasonably drawn, the case is for the jury, has been recognized by one of the group of courts whose decisions have been collected (Shadford v. Street Railway Co., 121 Mich. 224) and is assumed as a rule of procedure by all the others." [Labatt on Master and Servant (2d Ed.),

sec. 940, p. 2534, *et seq.*]   In other words, whatever may
be the effect of this doctrine, in a proper case for its
application, and where the evidence is clear and undis-
puted with respect to the custom and usage, it seems
quite clear that it cannot be invoked here, where the
question before us pertains to the ruling of the trial
court on a demurrer to plaintiff's evidence at the close
of his case, when nothing developed in plaintiff's case
to show what was the custom and usage with respect
to the conduct of such a business.

IV.   Respecting the alleged negligence of defend-
ants upon which plaintiff's case must rest, it is true
that the testimony as to the practicability of placing
screens or barriers about these clipping stands is quite
meager. And it was not shown just how the same might
be erected or maintained.   And in this connection we
may say that there was testimony to the effect that
the workmen at the clipping stands "often had to han-
dle long shafts, something like twenty-five or thirty
feet in length, and work them up at those clipping
stands."   It was doubtless for such reasons as this
that the witness said that screens or barriers could
be erected on two sides of such clipping stands.   How-
ever, all of the facts and circumstances adduced in evi-
dence and before the jury, together with the testimony
of this witness who had been employed for some time
in defendants' business at these very clipping stands,
we think was of sufficient probative force to show,
prima facie, that some protection could have been
afforded to plaintiff and other like workmen, from chips
or pieces of metal flying out from these clipping stands,
by the exercise by defendants of ordinary care to that
end, and without unreasonably interfering with the
prosecution of defendants' business.   It would seem
that such a clipping stand could readily have been
so located as to be screened off, in a simple manner,
from that portion of defendants' premises where others

worked, sufficiently at least to afford the latter reasonable protection from flying objects.

The master is of course not an insurer against danger to the servant, but his liability arises, if at all, from negligence on his part. He is bound to use ordinary care to furnish a reasonably safe place to work. Nevertheless, he is not required to take unusual and extraordinary precautions with respect to the place in which the servant is required to work. The standard of ordinary care on his part is the conduct of ordinary prudent persons under like circumstances. But so far as concerns the duty of the defendants to exercise ordinary care to make and keep their premises reasonably safe, it would appear that plaintiff's evidence was sufficient to make a prima facie showing of negligence. It would seem, at least, that it was sufficient from which the jury might well infer that the defendants had breached their duty toward plaintiff in this regard. The master is not bound to adopt the safest and best method of prosecuting the work in hand, but he is bound to adopt a method that is reasonably safe. And we think there is here evidence to support the inference that the method pursued in the present instance was not a reasonably safe one; and that this question then became one for the jury.

And in this connection we must not lose sight of the fact that the question before us pertains purely to the ruling of the lower court on a demurrer to the evidence; and that in such case the evidence is to be viewed in the light most favorable to plaintiff, giving him the benefit of every reasonable inference that may be drawn in his favor. Viewing the evidence in this light, we think that we would not be justified in saying, as a matter of law, that there was no evidence of negligence on defendants' part.

It would seem, from the evidence adduced, that reasonably prudent men would have anticipated that some injury would be likely to befall their employees,

by reason of the manner in which the work was conducted at these clipping stands. In view of the fact that the evidence tends to show that pieces of iron, of considerable size, were, at times, hurled with no inconsiderable force into various parts of this building, it would appear that men of ordinary prudence would have anticipated that their servants engaged therein would be likely to be injured by reason of this species of bombardment of the premises where such servants were required to work. It was not essential that they could anticipate that plaintiff would be injured precisely as he was injured. It was sufficient if, under all the circumstances, they should have anticipated that some injury was likely to occur by reason of thus conducting their business, provided the danger was one. which could have been avoided by the exercise of ordinary care. We think that the evidence was sufficient to indicate that reasonably prudent men would have foreseen that injuries of this character were likely to happen, and that there was sufficient evidence from which it may be inferred that the same could have been prevented by the exercise of ordinary care.

It would serve no useful purpose to review at length the cases to which we are referred by counsel. Respondents appear to place much reliance upon Wilkinson v. Bottling Co., 154 Mo. App. 563, 136 S. W. 720. But in that case a guard was provided by the defendant to prevent injuries from flying glass in case a bottle should explode. It appears that this guard was such as was customarily used in such establishments; and the defendant was held not to be liable for. failing to procure and install a better or safer one. In the instant case no effort whatsoever appears to have been made to furnish any protection to employees from the flying objects in question.

In Thein v. Supply Co., 116 Mo. App. 1, 91 S. W. 953, the master was held to have been guilty of a breach of duty owing to the servant in failing to guard

a machine, in any, manner, to prevent pieces of wire from flying therefrom, where it appeared that a very simple guard would have been effectual for that purpose. It is true that the plaintiff was there an inexperienced youth, which affected the question of his contributory negligence and that of the defendant's duty to warn him of the danger, but nevertheless the case distinctly recognizes the master's liability for failure to guard against such flying objects, and proceeds upon the theory that such failure was negligence on his part. Other cases to like effect might be cited.

"If the plant itself, or the things handled or manufactured, are of such a nature . . . as to create a risk of injury from flying or falling bodies, a duty arises to protect the servants either by altering the plant, or by devising some safeguard which will minimize the perils of the employment as far as is reasonably possible." [See 3 Labatt on Master and Servant, sec. 998, pp. 2673, 2674, and authorities there cited.]

V. If the place can be said to have been rendered unsafe by defendants' negligence, plaintiff cannot be held to have assumed the risk, as one of the natural hazards of the service. It would be impossible to reconcile the many cases in this State pertaining to this question, but the more recent decisions reflect the view that risks which do not inhere in the business of the master, when conducted by the latter with reasonable care, are not to be regarded as natural risks of such employment, and that such risks, being caused by the negligence of the master, are not assumed by the servant. In other words, the rule appears to be firmly established in this State that the servant assumes only those perils and hazards incident to the business after the complete performance by the master of the duty cast upon him. [See Jewell v. Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703; Jarrell v. Coal

Co., 154 Mo. App. 552, 136 S. W. 754; Bradley v. Coal Co., 167 Mo. App. 177, 151 S. W. 180; Dales v. Railroad, 169 Mo. App. 183, 152 S. W. 401; Bliesner v. Distilling Co., 174 Mo. App. 139, 157 S. W. 980, and cases cited.] This doctrine goes to the effect that where the risk is created by the negligence of the master, there is no room for the assumption of such risk by the servant. And the question is whether or not the servant was guilty of contributory negligence in the premises.

VI. The answer does not contain any plea of contributory negligence, and we think that plaintiff's evidence was not such as to justify us in saying that he was guilty of negligence as a matter of law. The mere knowledge that some danger from flying missiles inhered in the place in which he was required to work, would not necessarily defeat plaintiff's action. Unless the danger was so obvious and glaring, and so far threatened immediate injury, that a man of ordinary prudence would not have encountered it, plaintiff cannot be declared guilty of negligence as a matter of law. [See Jewell v. Bolt & Nut Co., Jarrell v. Coal Co., supra, and authorities cited.] The case just cited quotes approvingly from George v. Railroad, 225 Mo. 364, 125 S. W. 196, where it is said "But if the servant incurs the risk of place or machinery, which, though dangerous, are not so much so as to threaten immediate injury, or where it is reasonable to suppose that they may be safely used or occupied with great skill and care, the mere knowledge of the defects on the servant's part will not defeat a recovery. Negligence on the part of the servant in such cases does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined by the jury from such knowledge and all other facts and circumstances shown in evidence." [See, also, Brands v. Car Co., supra; Mathis v. Stock Yards Co., 185 Mo. l. c. 447, 84 S. W. 66.] "Unless the only conclusion that can

be drawn from the facts is that there was contributory negligence, the question is one for the jury." [Jewell v. Bolt & Nut Co., supra; Campbell v. Railroad, 175 Mo. 175, 75 S. W. 86.]

Under the evidence adduced we cannot say, as a conclusion of law, that the danger was such that no prudent man would have incurred the risk. We cannot say that it was unreasonable for plaintiff to suppose that he could perform the services required of him and escape injury, by the exercise of care and caution. And it became a question for the jury to say whether or not he was guilty of such negligence as to preclude his recovery.

VII. Respondents also insist that the proximate cause of plaintiff's injury was the negligence of the workmen engaged in doing the "clipping"—fellow servants of plaintiff—in causing the piece of metal in question to fly toward plaintiff. This is said to be so because of the testimony to the effect that the direction in which the chips or pieces were hurled depended considerably upon the way in which the chisel was placed and held. But we are of the opinion that plaintiff's injury cannot be said to have proximately resulted from the negligence of such fellow servants. Plaintiff was moving about, carrying scrap iron from one place to another; and it is unreasonable to suppose that the men working at the clipping stand, in the prosecution of such work, would be able to perform the duties required of them and at the same time keep a lookout for the location of other employees moving about from place to place within the shed—even if they could have controlled the direction of the flying pieces with any such exactness, which the evidence falls short of showing. Furthermore, there is no evidence whatsoever that these men were charged with any duty to take heed for the safety of other employees by endeavoring to control the direction of pieces of

iron that might fly about, but it appears that this work was conducted by defendants without regard to how or where such missiles might be hurled.

Under the evidence adduced we think that we could not say as a matter of law that the proximate cause of plaintiff's injury was not defendants' negligence in failing to provide reasonable protection from the flying objects. It is not within our province to perform the functions of a jury; and where the facts are such that reasonable minds may differ as to the inferences to be drawn therefrom, and which must determine whether an injury proximately resulted from the negligence of the defendants or from some other cause, the question is one to be passed upon by the triers of the fact.

"Whether the facts are disputed or undisputed, if different minds might honestly draw different conclusions from them, the case should properly be left to the jury, and, in order to withdraw such a case from the jury, the facts should not only be undisputed but the inferences, in respect of the defendant's failure of duty which arises from these facts, should be indisputable." [Baird v. Railway Co., 146 Mo. l. c. 281, 48 S. W. 78; See also Murrell v. Smith, 152 Mo. App. l. c. 116, 133 S. W. 76.]

"In considering a demurrer to evidence, care must always be taken not to infringe upon the constitutional right of trial by jury; and, when the undisputed evidence in the record is susceptible of two inferences, one consistent with ordinary care and the other tending to show negligence, leaving a ground for difference between fair-minded men as to whether or not negligence existed . . . the question is one of fact for the jury." [See Hegberg v. Railroad, 164 Mo. App. 514, 147 S. W. 192.]

We are of the opinion that the case made was one for the jury, and that the trial court erred in giving defendant's peremptory instruction.

The judgment should therefore be reversed and the cause remanded, to be proceeded with accordingly. It is so ordered. *Nortoni, J.,* concurs. *Reynolds, P. J.,* dissents in a separate opinion; and as he deems the decision herein contrary to that of the Supreme Court in Curtis v. McNair, 173 Mo. 270, 73 S. W. 167, and Kane v. Missouri Pacific R. Co., he asks that the case be certified to the Supreme Court for final determination, which is accordingly done.

## DISSENTING OPINION.

REYNOLDS, P. J.—I am unable to agree to the conclusion arrived at by the majority of my brethren in this case and am of the opinion that the case falls within what is said by our Supreme Court in Curtis v. McNair, 173 Mo. 270, 73 S. W. 167. That was a case in which the injury occurred, as it was claimed, by reason of the absence of a screen in front of molten iron drawn off from a furnace. It appeared that a screen had been in place to protect the workmen from flying sparks emitted from the molten iron as it flowed, but on the occasion of the accident, the screen, having become defective, had been removed, the work carried on in the absence of the screen and the plaintiff was injured by flying sparks or particles of molten iron. In the course of the opinion in the case Judge VAL-LIANT says (l. c. 285): "We are inclined to the view that the danger was obvious, and if there was no other fact in the case the court might have been justified in holding on the plaintiff's evidence that he was guilty of contributory negligence. But there was another fact in the case. Plaintiff seeing that the screen was absent, and appreciating the danger spoke to the foreman about it, and that foreman answered that they

would not blow the furnace hard until the screen was in place; thereupon the plaintiff went on with his work." In the case at bar there was no such assurance or inducement to continue in the work held out by the employer. Plaintiff went about his work with full knowledge of the conditions. The testimony is that it was a common thing for chips to fly from these pieces of machinery that were being cut up and that they flew all through the building in which the men, plaintiff along with the other employees, were habitually working. So that it seems to me that even if it may be said that the doctrine of assumption of risk is so far modified in this State as to be practically abolished, that in the case at bar the plaintiff falls within that rule as stated by our Supreme Court in Jewell v. Kansas City Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703. In that case at page 194 it is said: "It is elementary that a servant by entering the service of the master assumes all dangers *incident* to that service, and when injured in consequence thereof he cannot recover damages from the master on account of such injuries. While this rule is plain and easily understood, yet its application to particular cases has been a great source of trouble and annoyance to both the bench and bar of this State and elsewhere. Much of this confusion could be obviated, if the terms of the rule itself should be constantly borne in mind, that is, that the servant by entering the employment of the master *assumes all risks which are incident to that employment,* but he assumes none other. The carelessness and negligence of the master are in no sense incident to the servant's employment. The servant can neither by express nor by implied contract release the master from liability for injuries sustained in consequence of the master's negligence." Curtis v. McNair, supra, is cited, among other authorities for this rule. Continuing, it is said (l. c. 195): "So in discussing this rule and its application to a concrete case,

great care should be exercised in ascertaining whether or not the injury complained of was due to dangers incident to the servant's employment, or was it the result of the master's negligence. If due to the former, then a recovery should be denied; but if caused by the latter, then a recovery should be allowed." Curtis v. McNair, supra, is quoted approvingly on this in Honea v. St. Louis, Iron Mountain & Southern Ry. Co., 245 Mo. 621, l. c. 638, 151 S. W. 119.

Another reason why I think the conclusion arrived at by my learned associates is incorrect, is founded on what is said by our Supreme Court in the very recent case of Kane v. Missouri Pacific R. Co., 251 Mo. 13, 157 S. W. 644. The opinion in that case was written by former Judge FRANKLIN FERRIS prior to his retirement from the bench but was accepted by the majority of the court *in banc* in all things. Three judges dissented, one of the dissenting judges, however, Judge WOODSON, only to the action of the majority in remanding the case at all. In the course of the opinion Judge FERRIS (l. c. 28) citing Curtis v. McNair, supra, says that the question there presented was "whether the defendant was negligent in not having at the time in front of the furnace a screen which was ordinarily placed there to guard against such blow-outs. It was held by this court that under all the circumstances of the case it was for the jury to say whether the absense of the screen was negligence, *but there was no doubt that had the same been present the injury would not have occurred. In other words, its absence was the proximate cause of the injury.*" (The italics mine.)

In the case at bar there was no substantial evidence, as it seems to me, that the presence of screens on the sides of the cutting place or of the cutting table, would have prevented this accident. The only testimony covering that is that long pieces of machinery, rods, shafting, and the like, were carried to the cutting place and there worked upon, cut into small lengths,

bands cut off from them, and that while the witness thought that screens might have been put on the sides and so stopped chips from flying off to the sides, he said that none could be put at the ends; that is, the cutting blocks could not be entirely screened in. That screens on the sides would have prevented this accident, is not testified to by any one. Whether this particular piece that flew against the plaintiff and cut his eye came from the sides or the ends, does not appear from any evidence in the case. The jury had no evidence before it which would justify a finding that the absence of screens was the proximate cause of this accident. In point of fact, the testimony of the witnesses who spoke of preventing the flying of chips by putting in screens at the side, is that this particular chip flew off of the shaft on which two workmen were engaged, and hit the wall with such force as to make a dent in the wall. The sliver broke into two pieces, one of the pieces striking plaintiff and inflicting the injury. Whether that was before or after the wall was struck is not clear. Hence it is by no means clear, by any evidence in the case, that the presence of screens on the sides would have prevented this accident. These facts were developed from plaintiff's own witnesses.

Under this state of facts, leaving out all consideration of assumption of risk or contributory negligence, can it be said that it was negligence and carelessness on the part of the employers not to have put screens along the sides of the cutting block or place? Surely not, unless the absence of screens was the proximate cause of the accident. I do not think that there is any substantial evidence in the case to prove that this is so. Nor does it seem to me reasonable to say that any duty rested on these employers, engaged in this kind of work, to have screened in this cutting place, any more than it would be reasonable to ask a blacksmith to screen in his anvil or a stone cutter his working place.

It seems clear to me that on the authority of Curtis v. McNair, supra, and Kane v. Railroad, supra, the action of the trial court in sustaining the demurrer to the evidence was correct. I think that the opinion of the majority is contrary to these two decisions of our Supreme Court and therefore feel warranted in asking that it be certified to that court for its determination.