# DANIEL F. JARRELL, Respondent, v. BLACKBIRD BLOCK COAL COMPANY et al., Appellants.

### Kansas City Court of Appeals, April 3, 1911.

1. **MASTER AND SERVANT: Natural and Inherent Risks: Jury Question.** Plaintiff, an experienced miner, was employed at an increased wage to open a clogged airshaft under the immediate supervision and control of the foreman. No safe-guard was provided for injury against landslides by one of which plaintiff was injured. Despite the vigilance of the foreman in removing dirt from places that appeared unsafe, slides had previously occurred, owing to the fact that the soil was sandy clay, which, being wet, was liable to slip, because of the pressure and vibration produced by the hoisting apparatus. By the simple expedient of putting in false cribs, the danger could have been eliminated. *Held*, that the jury were entitled to believe that the risk which culminated in the injury to plaintiff was not one of the natural and inherent risks of the business, had it been conducted by defendants in a reasonably careful manner.

2. ———: **Assumption of Risk.** Where the risk is created by the negligence of the master, there is no room in the case for the application of the rule that, as a matter of law, the risk was assumed by plaintiff as one of the natural hazards of the service.

3. ———: ———: **Making Safe and Unsafe Place.** The rule that, where plaintiff's injury was due to a risk incident to the employment of making safe an unsafe place, there can be no recovery, should not be applied where the servant in no wise represents the master, and is working under the direction and supervision of the master's vice-principal, because the master still owes his servants the fundamental duty of exercising reasonable care for their safety.

4. ———: **Contributory Negligence.** Mere knowledge of the danger of working in a defective place will not defeat plaintiff's action unless the danger was so glaring as to threaten immediate injury, and where there is room in the evidence for a reasonable inference that an ordinarily careful and prudent person in the situation of the plaintiff well might have believed that by using caution and vigilance he could prevent a serious landslide, or if one occurred, escape being injured by it, the evidence presents the issue of contributory negligence as one of fact for the jury to solve.

Appeal from Putnam Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

AFFIRMED.

*J. S. McKinley* and *C. C. Fogle* for appellants.

(1) The master is not an insurer of the safety of the servant. The plaintiff was an experienced miner, knew what to do and how to do it in cleaning out and repairing the defendants' shaft. He knew all the dangers incident thereto, as to the sides caving in. He examined it before he went to work, received larger wages for undertaking the job. He knew as well as the master, the defendant, that the sides might cave in. He prepared for it by putting a belt around himself. So, in this case he cannot recover, because it is a well settled rule of law in this state that if the defects in the appliances or places of work, were patent to the servant, equally as well as to the master, that is, such as the servant would discover if ordinarily observant, he becomes chargeable with the knowledge of their defective condition, and if injured thereby, cannot recover of the master. Watson v. Coal Co., 52 Mo. App. 366; Flynn v. Bridge Co., 42 Mo. App. 529; Fulger v. Bothe, 117 Mo. 475; Aldridge v. Furnace Co., 78 Mo. 559; Keegan v. Kavanah, 62 Mo. 230; Hulett v. Railroad, 67 Mo. 239; Burns v. Railroad, 129 Mo. 41; Devling v. Railroad, 87 Mo. 545; Pohlman v. Foundry Co., 123 Mo. App. 219; Marshall v. Haypress Co., 69 Mo. App. 256; Blundell v. Manufacturing Co., 189 Mo. 552; Slagel v. Lumber Co., 138 Mo. App. 432; Welch v. Dietzer & Wenzel, 136 Mo. App. 260. (2) The master is entitled to conduct his business in his own way and with such appliances as he sees fit, subject to the qualification that the appliance shall be reasonably safe, considering the character of the work to be done, but need not be the latest or best appliances for doing such work. Blundell v. Mfg. Co., 189 Mo. 558; Bradley v.

Railroad, 138 Mo. 293.    (3)   It is also equally well settled that a master can conduct his business in his own way, and the servant, knowing the hazards of his employment, impliedly waives the right to compensation for injuries incidentally resulting therefrom, although a different method of conducting the work would have been less dangerous.    Bradley v. Railroad, 138 Mo. 293.   (4)  The master is liable to his servant only in case of negligence, that is to say, for failure to discharge some duty that he owes the servant from which failure the servant is injured.    A servant assumes the ordinary and usual risks incident to mining or excavating, the existence of which are, or ought to be, known to him.  Boemer v. Central Land Co., 69 Mo. App. 601.  (5)   The evidence does not show that Prichard was the foreman of these defendants, nor does it show that he was foreman of the defendant that undertook to clean out the shaft.   Hence defendant's demurrer should have been sustained.

*Campbell & Ellison, Higbee & Mills* and *N. A. Franklin* for respondent.

(1)   The theory upon which appellants tried the case is found in their instructions No. 3 and No. 6, that is, that the defendants had a right to conduct their business in their own way, and in accordance with their own plans and methods, "unless you further believe from the evidence that the wall at the point where the slide occurred was in a dangerous condition, and that such dangerous condition was known to the defendants, or could have been known to them by ordinary and reasonable care and diligence on their part."  According to the testimony of defendants' witnesses, the earth was thoroughly water soaked.  On one side of the hole there was an almost perpendicular wall of water soaked clay and sand, with a slant of only two feet.  Common experience will teach any man that such a perpendicular wall of

water soaked clay and sand in northeast Missouri must cave in and that within a very short time, and that ordinary care and diligence would have suggested that such a danger should have been guarded against. Appellant's statement admits that this condition existed at the time plaintiff was directed by defendant's foreman, Pritchard, to go down into the shaft at noon on May 16. He assured plaintiff that everything was all right. It was reasonable for plaintiff to understand that it was safe for him to go to work. Defendants could not cast upon plaintiff the hazard of the earth caving in upon him when by reasonable care they could have guarded against such danger. Smith v. Kansas City, 125 Mo. App. 150. (2) Defendants state one ground on which they rely for a reversal of the judgment herein, viz: The court erred in not sustaining a demurrer to the evidence. To this objection we will address ourselves. Counsel say, first, that plaintiff assumed the risk, and, secondly, that there was contributory negligence on the part of the plaintiff which precludes his recovery. Before a demurrer to the evidence will be sustained it must be shown that the plaintiff was not entitled to have his case weighed by the triers of fact when considered in the most favorable light. Jordan v. Transit Co., 202 Mo. 418; Von Trebra v. Laclede Gaslight Co., 209 Mo. 648; Hall v. Compton, 130 Mo. App. 675. The plaintiff did not as a matter of law, assume the risk of injury. He was working under the direct supervision of defendant's foreman and had a right to assume that the foreman had looked well to plaintiff's safety. Smith v. Kansas City, 125 Mo. App. 150; Herdler v. Buck's Stove & Range Co., 136 Mo. 3.

JOHNSON, J.—Action by a servant to recover damages for personal injuries alleged to have been caused by negligence of his master in failing to exercise reasonable care to provide him a reasonably safe place in which to work. The answer contains a general traverse

and pleas of contributory negligence and assumed risk. The cause is here on the appeal of defendants from a judgment of Five Thousand Dollars recovered by plain-. tiff in the circuit court.

Defendants, engaged in operating a coal mine in Adair county, employed plaintiff, an experienced miner, to work with a gang engaged in opening an air shaft which had been clogged at the top by earth and debris from an extensive cave-in. The shaft was about eighty feet deep and some earth had fallen to the bottom but dislodged and broken timbers had caught in the shaft at a point some twenty or twenty-five feet below the surface and, together with a large volume of caved-in earth formed an obstruction that effectually choked the shaft. This prevented ventilation of the mine and work was stopped therein until ventilation could be restored. The diameter of the cave-in at the surface was about eighteen feet and the sides converged downward with the shaft as the spout of the funnel.

The method adopted by the foreman for clearing away the obstruction was as follows: A platform was built across the hole and a hoisting apparatus operated by horse power was placed on the platform. Men were sent down to take out the earth and debris and send it up in a tub which was lowered and raised by the hoist. This work was in progress when plaintiff was hired. The work was dangerous; plaintiff knew of its dangerous character and he and his fellow-workmen were paid higher wages than they would have received for working in the mine. There were two principal sources of danger in the work, viz., the obstructing timbers were likely to give way at any time, and, together with their load fall to the bottom of the shaft and, on account of the wet condition of the earth, landslides were likely to occur from the sloping sides of the hole and injure the laborers. To guard against the first danger, each miner was equipped with a life-line consisting of a rope attached at one end to a belt around his waist and at the

other end to a post at the top. No safeguard was provided for injury against landslides. The foreman and laborers looked for and the latter removed loose earth from the sides but several small and harmless slides occured during the work. Finally, while the men were still at work a landslide of earth weighing a ton or more occurred near the place where plaintiff was working. The foreman, who was at the top, seized the lifeline and attempted to pull plaintiff away from danger, but plaintiff was caught and severely injured by the falling earth. The work in question was conducted under the immediate supervision and control of the foreman. Defendants contend that the method employed was reasonably safe, while plaintiff contends that it was not and that defendants negligently failed in the performance of their duty to exercise reasonable care to furnish their servants a reasonably safe place in which to work.

Witnesses for plaintiff say that the usual and only safe way of doing such work required that false cribbing be put in from the beginning of the work. On cross examination, the foreman was forced to admit that false cribbing would have protected the men from landslides and that the reason it was not put in was the lack of sufficient material. We quote from his testimony:

"Q. Then one of the dangers in the work that occurs is the possible slide? A. Yes, sir.

"Q. You had no way to protect them against the slide, had you? A. Why, I expect it could have been done, if necessary.

"Q. According to the plan that you adopted in clearing up that shaft, did you have any way of protecting the men down in the shaft from danger of a slide? A. Providing it was necessary, I expect I had.

"Q. Answer the question. A. Why, yes, sir.

"Q. What was it? A. Why, I could have put in false cribbing if necessary.

"Q. You could have put in false cribbing from the start? A. Certainly, I could.

"Q. That would have protected them from a slide, wouldn't it? A. Well, in some cases it would if it wouldn't crush the cribbing in.

"Q. Wouldn't it in this case if you had put in cribbing, false or permanent, wouldn't that have protected the men that were working down there from the danger of a slide? A. Well, yes, sir, I could.

"Q. When did you commence getting timbers for the purpose of making a crib there? A. Well, we had part of them there about the time that we did start, but we hadn't sufficient on account of the wet weather.

"Q. And that's the reason why you didn't put it in, is it? A. Not altogether, sir.

"Q. Well, what do you mean when you say you didn't have enough timber there? A. Well, because I claim I didn't have enough timber to finish the shaft all the way down.

"Q. And you was going to make the shaft as soon as you got the timber? A. I was going to start and when I got down to that place where I could see the walling of the old shaft I was going to curb it up and there wasn't much danger in that at all, unless a man went and disobeyed orders."

Defendants argue that their demurrer to the evidence should have been sustained. The argument may be reduced to three propositions, viz., *first,* defendants were guilty of no breach of duty to plaintiff; *second,* the risk of injury from landslides was one of the natural risks of the employment assumed by plaintiff and, *third,* plaintiff was guilty in law of contributory negligence. We shall discuss these propositions in the order of their statement.

We think the evidence tends to accuse defendants of negligence. The right of an employer to conduct his own business in his own way is a rule pertaining to the relation of master aand servant too well settled to call for discussion. But this right has its limitations and the law wisely has fixed those limits, that the right

Jarrell v. Coal Company.

shall not impinge upon the obligation of the master to exercise reasonable care to provide his servant a reasonably safe place in which to work. The master cannot relieve himself of any part of such obligation by contract express or implied—not even by contract supported by the consideration of an increased wage. The failure to exercise reasonable care is negligence; negligence is a positive wrong, and the policy of the law denounces as immoral and unjust any contract by which the master seeks to protect himself at the risk of his servant, against the consequences of his own wrongdoing. The master is not bound to adopt the safest method of doing the work in hand, but is bound to adopt a reasonably safe method. The evidence supports the inference that the method pursued in the present instance was not the best and was not even reasonably safe. The soil was a sandy clay and being wet was likely to slip. Despite the vigilance of the foreman and workmen in removing dirt from places that appeared unsafe, slides had occurred. The tub, when loaded, weighed about five hundred pounds and, since the platform supports rested on the ground adjacent to the hole, the pressure and vibrations produced by hoisting added to the causes that might produce a dangerous landslide. The men were in danger all the time and it appears that there was no necessity for exposing them to such danger. By the simple and comparatively inexpensive expedient of putting in false cribbing, that danger could have been eliminated. The jury, therefore, were entitled to believe that the risk which culminated in the injury to plaintiff was not one of the natural and inherent risks of the business had it been conducted by defendants in a reasonably careful manner.

Passing to the issue of assumed risk, we find nothing in the facts and circumstances of the injury to support the contention that, as a matter of law, the risk was assumed by plaintiff as one of the natural hazards of the service. It would be an impossible task to attempt to

reconcile the cases in this state that deal with the doctrine of assumed risk. However, the recent decisions of the Supreme Court and Courts of Appeal harmonize with each other, though they are at variance with much that has been written in earlier decisions. The rule now may be considered as firmly established that risks which do not belong to the employment when conducted by the master with reasonable care, are not natural risks of such employment and where caused by the negligence of the master, they are not assumed by the servant for the simple reason that the servant could not, if he would, give the master a right to be negligent and the law will not imply a contract the parties could not establish by express agreement. In Jewell v. Kansas City Bolt & Nut Works, 132 S. W. l. c. 709, the Supreme Court quote with approval the following excerpt from the opinion in Mathis v. Stock Yards Co., 186 Mo. l. c. 447:

"And if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the applicances or to quit the service of the master if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances, notwithstanding they are not reasonably safe. And if he does use them, and exercises such care and caution, and is injured, the servant does not waive his right to compensation for injuries received in consequence unless guilty of contributory negligence; but, if the appliance is so obviously dangerous that it cannot safely be used with care and caution, or, as it is sometimes said, if the danger of using it is patent, or such as to threaten immediate injury, then the servant is guilty of contributory negligence if he uses it, and the master is not liable, notwithstanding his prior failure of duty."

That is wholesome doctrine and means that where the risk is created by the negligence of the master there

is no room in the case for the application of the rule of assumed risk. Nor do we find any occasion for holding that plaintiff's injury was due to a risk incident to the employment of making safe an unsafe place. We held in Henson v. Packing Co., 113 Mo. App. 618, that "when the work in hand is dangerous for the reason that it is to secure and make safe an unsafe place, the rule, as generally applied, that the master must furnish the servant a safe place in which to work, can have no application. To say that a man can have a safe place to work in an unsafe place is an absurdity."

That rule applies where a servant is sent to clear up a wreck, or to repair a defect and is given control over the method of doing the work. Such delegation of authority invests him with functions of the master, constitutes him a sort of vice-principal, and, being left free to control his own actions, he cannot complain of the master if he is injured in consequence of, or in spite of, the very method he chooses.

But obviously that rule should not be applied where the servant in no wise represents the master and is working under the direction and supervision of the master's vice-principal. In making safe an unsafe place the master who retains control of the work and demands obedience from his servants must not enhance the natural dangers of the work by his own negligence. He still owes his servants the fundamental duty of exercising reasonable care for their safety. The fact that the work is inherently more dangerous than other work does not relieve the master of such duty but calls for the adoption of a method suitable to the natural dangers and risks thereof. It would be monstrous to say that a master, with impunity, may subject his servant to danger of death or serious injury where such danger may be obviated by the exercise of ordinary care and common humanity.

What we have just said is fully supported by the

opinion in the recent case of Corby v. Telephone Company, 132 S. W. Rep. l. c. 718. Speaking through WOODSON, J., the Supreme Court say:

"Nor would the master be liable for damages for injuries sustained by the so-called servant in consequence of the unsafe place furnished him in which to labor, where the servant is employed not only to repair the defects and make the place safe, but also to manage and control these repairs while they are being made, for the obvious reason that in such case the servant is employed because of his superior knowledge and experience in such matters, and, consequently, acts both for himself and the master, who presumably has no knowledge whatever upon the subject. But clearly that rule has no application to a servant who has no supervision or control over the work being done, especially where, as here, the work consisted of the dismantling and the reconstruction of one entire telephone plan in a large city, under the supervision of a general manager and numerous assistant managers. In all such cases, the general manager and his various assistants represent the master. In such case, clearly the servants and linemen who are serving under and obeying their superiors are not representing the master. Under the conditions of things disclosed by this record, the law nowhere clothed the plaintiff or any of his fellow linemen with authority to supervise and control the work in which they were engaged . . . and the telephone company owed them the same duty to inspect and furnish them with a reasonably safe place in which to work as all other masters owe to their servants in that regard."

Finally, as to the issue of contributory negligence, mere knowledge of the danger of working in a defective place will not defeat the action unless the danger was so glaring as to threaten immediate injury. [Jewell v. K. C. Bolt & Nut Co., supra, and cases cited.]

The evidence presents the issue of contributory negligence as one of fact for the jury to solve. The danger

of landslides was present all the time, but there is room in the evidence for a reasonable inference that an ordinarily careful and prudent person in the situation of plaintiff well might have believed that by using caution and vigilance he could prevent a serious landslide, or if one occurred, escape being injured by it.

The learned trial judge did not err in overruling the demurrer to the evidence. We find the instructions conform to the views expressed and that the record is free from prejudicial error.

The judgment is affirmed. All concur.