TEXAS POWER & LIGHT CO. v. BURGER.
(No. 7115.)

(Court of Civil Appeals of Texas. Dallas. April 11, 1914. Rehearing Denied May 9, 1914.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for injuries to an employé while assisting in setting an electric light pole, evidence *held* to support a finding of actionable negligence for the failure of the employer to furnish reasonably safe appliances and a sufficient number of competent employés to do the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 296*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where an employé, acting under orders of the vice principal, who directed the work, neither did nor omitted to do anything which could contribute to an accident resulting in injury to him, the issue of contributory negligence was not in the case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

3. MASTER AND SERVANT (§ 185*)—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT.

Where plaintiff and his coemployés worked under the direct orders of the foreman and the coemployés did what the foreman directed them to do, an injury sustained by plaintiff in consequence thereof was caused by an act of the employer, who could not escape liability on the ground that the negligence was that of a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

4. TRIAL (§ 145*)—ISSUES—WITHDRAWAL.

The failure of the court to submit to the jury an issue raised by the pleadings amounts to a withdrawal thereof.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 328, 341; Dec. Dig. § 145.*]

5. MASTER AND SERVANT (§ 298*)—INJURY TO SERVANT—EVIDENCE.

An employé, sustaining a personal injury negligently inflicted, cannot recover for injuries sustained in a prior accident; and, unless the jury can determine what portion of the injuries were occasioned by the negligence complained of, and what portion was occasioned by the prior accident, there can be no recovery.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 298.*]

6. MASTER AND SERVANT (§ 293*)—INJURY TO SERVANT—NEGLIGENCE—INSTRUCTIONS.

Where, in an action for injuries to plaintiff while assisting his coemployés in setting an electric light pole, the court made the test of actionable negligence to depend on whether the employer had exercised reasonable care in selecting the tools and instrumentalities, and not whether he should have selected and used another system of placing the pole in position, refusal to charge that the jury could not consider, as a ground of negligence, the fact that another system was not used was not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

7. MASTER AND SERVANT (§§ 101, 102*)—INJURY TO SERVANT—DEFECTIVE APPLIANCES.

The right of an employer to conduct his own business in his own way is limited by his duty to exercise reasonable care to furnish reasonably safe appliances and place in which to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

8. TRIAL (§ '105*)—INSTRUCTIONS—SUBMISSION OF INCOMPETENT TESTIMONY.

Where inadmissible testimony was received without objection, and there was no motion to strike it out, refusal to charge that the jury should not consider the testimony was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 260–266; Dec. Dig. § 105.*]

9. APPEAL AND ERROR (§ 690*)—RECORD—MATTERS TO BE SHOWN—MATERIALITY OF EXCLUDED EVIDENCE.

Where, in an action for personal injuries, in which it was in issue whether plaintiff had fully recovered from a prior accident, and evidence of statements of physicians advising an operation was excluded, the record on appeal does not disclose whether the advice was based on necessity created by the prior injury or by the injury sued for, the materiality of the evidence not being shown, its admissibility cannot be decided.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2897–2899, 2902–2904, 2906, 2908; Dec. Dig. § 690.*]

10. EVIDENCE (§ 317*)—HEARSAY EVIDENCE.

The testimony of one as to what physicians had stated to him or in his presence as to the advisability of an operation on him was inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by C. O. Burger against the Texas Power & Light Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harry P. Lawther, of Dallas, and Collins & Cummings, of Hillsboro, for appellant. Wear & Frazier, of Hillsboro, for appellee.

TALBOT, J. On July 27, 1912, while appellee and others as employés of appellant were engaged in lifting and setting an electric light pole in the city of Hillsboro, Tex., appellee was seriously injured. The work was done with the assistance of pike poles, and what was called a "crutch" or "jenny." The pike poles were about 2 inches in diameter and about 12 or 14 feet in length. In one end of them there was fitted a sharp iron spike. When the pole was raised to about the height of the men's heads, or a

---

little higher, the men using the pike poles struck the iron spikes into the electric light pole, and, grasping the pike pole with their hands, pushed said light pole upward. As the electric light pole was thus being raised, the man with the jenny would slide it down so that the pole at intervals could rest upon it, and the men engaged in raising it with the pike poles could rest. The crutch or jenny was principally of wood constructed with a cross at the top. The crotch of the cross was lined with an iron band in the shape of a half moon or crescent. Sharp teeth protrude from the bottom, and from the upper end of the cross. When the pole being raised fits into the crotch of the jenny, the sharp teeth thereof stick into the wood and keep the pole from slipping or turning. On the occasion in question, there were four men using pike poles, one to guide and place the jenny, and one who stood at the hole to keep a board in place, which prevented the butt end of the electric light pole from slipping past the hole, and which caused it to slide into the hole when raised to a sufficient height. The pole being raised when appellee was hurt was the largest and heaviest pole that he was ever called upon to assist in raising. He had been in the employ of the appellant for some time before this, but the poles he had theretofore been required to aid in raising were smaller and lighter poles, probably not over 25 or 30 feet long. At the time appellee was injured Hall Calhoun, appellant's foreman, who had authority to employ and discharge men, was present, and controlled and directed appellee and the other employés in the work they were then doing. The jenny furnished by appellant and being used in raising the pole when appellee was injured was too small. The pole would not fit down into the crotch of the cross, so as to be caught and held by the teeth in the bottom thereof, and hence the cross and the teeth could not perform the functions for which they were created. The evidence also warrants the conclusion that one of the pike poles, but not the one being used by appellee, was equipped with a loose pike or spike, which, when the man handling it went to change his hold and shift it to another place, would remain sticking in the pole, and would have to be shaken out. This caused delay, and kept the strain on the appellee and other men an undue length of time. In addition to this, one of the men using a pike pole had sore hands, each of them being blistered, which was known to appellant's foreman, Calhoun, before appellee was hurt, but unknown to appellee until afterwards. When the pole had been raised to an angle of about 45 degrees and just ready for the last push upwards by which it would go down into the hole, it twisted and swerved, and an undue amount of its weight was thrown on appellee, causing him to be injured in part at least as alleged in his petition.

Appellee had received an injury some years before this, from which he suffered very much, as he has from the injury complained of in this suit. He had, however, at the time of the present injury, seemingly recovered from his former injury. He had been doing for a long time, intervening between the first and second injury, the hardest and heaviest kind of work, requiring great lifting and straining, without complaint, and was before the injury here complained of, far above men of average strength. The grounds of negligence alleged are: (1) Failure of appellant to furnish appellee a reasonably safe place to work; (2) failure to furnish reasonably safe tools and implements with which to perform the work being done when appellee was injured; (3) in requiring and directing appellee to raise the electric light pole by the means employed; (4) in not furnishing a sufficient number of competent men to perform the work of raising the pole by the means and manner required with safety; (5) that one of appellee's colaborers had sore hands, and was not, by reason thereof, physically fit to give proper assistance in raising the pole. The defenses pleaded are: (1) General and special demurrers; (2) general denial; (3) negligence of fellow servant; (4) that at the time of the alleged accident, on July 27, 1912, the plaintiff was not physically sound, but, on the contrary, was a cripple, having long prior thereto, to wit, on the 17th day of December, 1909, received serious and permanent injuries to his spine and hip, resulting in a curvature of his spine, severe pains and convulsions, and paralysis of his left leg, etc., which were the same identical injuries of which the plaintiff now complained, and which were due to the injury received in December, 1909, and not due to any fault or negligence of said defendant on the occasion in question; (5) contributory negligence; (6) assumed risk; (7) that the injury, if any, received by the plaintiff July 27, 1912, was the result of an accident. A trial by jury resulted in a verdict and judgment in favor of the appellee for the sum of $3,000, and appellant appealed.

At the threshold of this appeal we are confronted with a motion made by appellee to strike out certain portions of appellant's brief, because the same are not in compliance with the rules. This motion, especially for the reason that we have concluded the case ought to be affirmed, will be overruled.

[1] Appellant's assignments of error from the first to the fifth, inclusive, complain respectively of the court's refusal to peremptorily instruct the jury to return a verdict in its favor; in charging the jury that it was appellant's duty to exercise ordinary care to furnish, while appellee was engaged in the work he was doing when hurt, reasonably safe tools and implements with which to perform that work; and in submitting to the

jury as grounds of negligence upon which appellee might recover: (1) The failure of appellant to furnish reasonably safe pike poles and raising crutch or jenny with which to perform the work in which appellee was engaged when injured; (2) the failure of appellant to exercise ordinary care to furnish appellee with assistants of sufficient number and competency to do the work he was doing when hurt with reasonable safety to himself; and (3) the direction of appellee and his colaborers by J. H. Calhoun, appellant's vice principal, to raise and place in position the electric light pole as alleged in appellee's petition, in the manner in which it was raised. The proposition urged under these assignments, aside from a number of abstract propositions of law which we deem it unnecessary to state, is to the effect that the evidence fails to show that the injury to appellee was directly and proximately caused, either, by the defective pike pole or jenny, the failure of the appellant to furnish the plaintiff assistants of sufficient number and competency to do the work assigned him, or by the appellant's negligent manner of raising the electric light pole. We think there was no error in the submission of these issues. The evidence was sufficient to warrant a finding that either act of commission or omission referred to in the court's charge, and upon the existence of which a verdict in favor of appellee was authorized, was the proximate cause of appellee's injury.

C. O. Burger testified for himself: "I had never before handled a pole like this one, a 45-foot pole. I had raised smaller poles. This pole that we were raising was longer, larger, and heavier in every way than those I was accustomed to raising. The poles that I had been raising fitted in loose in the raising crutch, down into the circle, on the teeth. When I went to raise them up with the pike pole it was easy to move the jenny down the pole and keep up with the raising up of the pole and protect the men from the weight of the pole. * * * When we were raising that pole that afternoon, when I got hurt, * * * it would hang up in the jenny; the top teeth of the jenny would cut the pole, and it would hang on. * * * After it got a certain distance it got larger, and just the top teeth could cut into the pole, and it would not fit tight down. It had never done that with the poles that I had been accustomed to raising before. * * * The company furnished us with that raising crutch on any other poles that I had helped raise, and I had not thought about that trouble, about the catching or making the pole turn, or anything of the kind. I did not anticipate or understand what danger might befall me in using it that way; never gave it a thought. There were four men there with pike poles, counting myself, assisting in this work. * * * Those pike poles were not all in good order; one of the boy's pike poles, in the lead, had a loose spike, and that would come out. * * * It would come out of the end of the pike pole, and would be sticking into the pole, which would result in a strain on the other three men. That happened at the time I was injured, leaving myself and two men holding up the pole. * * * As to what happened to me there at that time, the other boys kind of give way and the pole swung over, and I swung under to catch the weight, and when I did I hurt my hip. I swung under to catch the weight to keep it from coming down, from falling. I have no idea what caused the pole to swing around. The pole never swung around that way when it would slip down into the crotch of the jenny and catch on the bottom teeth. This pole was resting on the upper teeth of the jenny. I had never been in that kind of danger before, in that way; when I caught the strain of that pole it seemed to rip my bone loose, my backbone and hip and made me awful sick. When that pole twisted that way, and that weight fell on me, I hallooed to the others to hold up on to it and put the weight to it to push upon the pikes and help me to take the weight. They pushed up a little; what they could, but they didn't have the strength. * * * Just prior to the pole turning one of the spikes was loose on the end of it. I don't remember whether it was before or afterwards that the spike came out."

The witness Russell testified: "There was something unusual happened when they were raising that pole; the old gin that they had there did not seem to be working good; would get fastened in the timber, and they would have some difficulty in getting it loose, and it would leave a strain on them while they were trying to unfasten the gin that they had there. I know that it left a strain on Mr. Burger and the other men while they were unfastening the gin. I could not say whether the pikes with which they were working were in good order or not; only it would seem like they would have trouble with them some time in getting them unfastened. Seemed like some of the men didn't understand the job well, somehow or other. * * * After the pole was placed Mr. Burger went over and lay down on a truck. I went over where he was, and talked to him, and went and got him some water and bathed his face, and after he went to vomiting I sent for a doctor, Dr. McHaffey. That was after the pole was set. He appeared to be then in great pain."

The witness Everett testified: "Every man had to hold with all his strength to save his life. The pole turned a little bit over the way Mr. Burger was. If the pole slips and turns there is a great deal more danger, more weight and strain then on the man towards whom it turns if they support it. * * * A man is liable then to get hurt most any time."

L. P. Phillips testified: "In raising a pole with pike poles they have to have the men in pairs; if you have more men on one side than there is on the other, the odd man has to work against two men. In raising a 45-foot pole with pike poles there would be at least four men with pike poles, two on a side, and a man at the gin (jenny), and then there ought to be two on the sides without poles to push with their hands against the pole (being raised), to steady the pole, and one at the foot, or the butt."

The testimony further shows that the foreman, Mr. Calhoun, was personally present, directing what appellee and his colaborers should do, and how they should do it, and that he stated that so far as he knew none of the men assisting in raising the pole had any previous experience in that character of work. He said: "So far as I know, those were the first poles they had put up." He further testified: "I really didn't know anything had happened other than hallooing; Oscar [appellee] or some of the men hallooed to push. We had just gotten the pikes in ready to throw the pole in the hole, and there was a kind of twist, or the jenny give a little, or something, and I heard him halloa to push, or something to that effect. We went ahead and threw the pole in the hole, and Burger went over and sat down on a — then he got up and laid down on one of those express trucks, and I went to him. I have heard it stated that the spike on one of those pike poles was loose; that when they would stick it into the pole, the spike part of it would stay there; they would have to pull it out. I don't remember of one being in that shape."

We, of course, cannot quote all the testimony bearing on the issues submitted to the jury, and have undertaken to give above only so much of it as, in our judgment, authorized and supports those paragraphs of the court's general charge complained of by the assignment here under consideration, and which make plain the fact that the court committed no error in refusing the peremptory instruction requested by appellant. Touching the question of the condition of the pike pole being submitted as an issue of negligence, it may be said that, while on cross-examination appellee stated that he did not remember or know whether the spike came out of the pike pole before or after the electric light pole swerved or turned, causing his injury, yet, in view of his testimony on direct examination, to the effect that the spike came out at the time he was injured, and the other facts and circumstances in evidence, it became and was a question for the jury to determine whether the furnishing by appellant of such an instrument to be used in doing the work in which appellee was engaged was an act of negligence, and the proximate cause of appellee's injury. Likewise, whether or not either of the other acts of commission or omission submitted to the jury as a ground of negligence upon which a recovery by appellee might be had was, under the evidence, a question of fact for the determination of the jury.

[2, 3] The sixth and seventh assignments of error complain, respectively, of the refusal of the court to give special charges requested by appellant, submitting as issues in the case contributory negligence on the part of appellee, and negligence on the part of his fellow servants. These charges were properly refused. The evidence did not warrant a finding that appellee's injury was the result either of negligence on his part or the negligence of a fellow servant. No act or omission of the appellee is shown which could be construed as even remotely contributing to bring about the accident and injury of which he complains, nor can the accident or its consequences to appellee be charged to any negligent act or omission of a fellow servant of appellee. Neither the appellee nor any of his fellow servants had anything to do with determining the number and competency of the men required to raise the pole in question, or the fitness of the instrumentalities selected and used in raising it. They were doing the work under the orders and supervision of Mr. Calhoun, appellant's vice principal. He was present and determined and directed what appellee and his fellow servants should do, and how and with what instrumentalities they should do it. Whatever the negligence was that caused appellee to be injured, it was not that of a fellow servant, but of the appellant, the master.

Appellant's assignments of error from the ninth to the fourteenth, inclusive, complain, respectively, that the court erred in refusing to instruct the jury at its request that they would not consider as a ground of negligence on its part: (1) The fact that appellant failed to use ordinary care to furnish the appellee a reasonably safe place in which to work; (2) the fact that the jenny used in raising the electric light pole did not have a crotch large enough to hold the large part of said pole; (3) the fact that the appellant failed to furnish a sufficient number of competent men to raise and place the pole; (4) the fact that one of appellee's coemployés, to wit, Morse, had a sore hand; (5) the fact that the pole was raised by men with pike poles instead of by block and tackle; (6) in refusing to give a special charge requested, to the effect that, if at the time and place where the appellee claims to have received his injuries, he was not in a sound physical condition, and was more susceptible to an accident by reason of having received injuries while working on the railway in December, 1909, he assumed the risk of dangers resulting from heavy work of the nature of that which he was doing at the time of the accident. For propositions under these several assignments, which

are presented together, and for the testimony requiring the giving of the charges to which they relate, we are referred to the propositions and statements made under the foregoing assignments of error, Nos. 1, 2, 3, 4, and 5. For the reason given in discussing and overruling the said assignments Nos. 1, 2, 3, 4, and 5, we hold that assignments Nos. 8, 10, 11, and 13, here under consideration, are not well taken.

[4] The alleged failure of appellant to use ordinary care to furnish appellee a reasonably safe place in which to work was not submitted to the jury as an issue upon which a recovery might be had, and this was equivalent to a withdrawal of it from the jury's consideration.

[5] In reference to the twelfth assignment it is sufficient to say that the facts therein enumerated, if true, would not of themselves cast upon appellee the assumption of the risk of dangers incident to the character of work in which he was engaged at the time he was hurt. The rights of the appellant in respect to the physical condition of the appellee before and at the time he received the injuries of which he complains in this suit were taken care of by a special charge, given at appellant's request, correctly applying the law applicable thereto, wherein the jury were told, in substance, that although the appellant may have been guilty of negligence, yet as the undisputed evidence showed that appellee had received injuries as a result of an accident while working upon a railway in December, 1909, the appellant herein would only be liable for such injuries as directly and proximately resulted from the negligence of appellant in this case, and that the jury could not find for appellee any greater sum than would reasonably compensate him for the latter injury, and that they could not take into consideration in making up their verdict any injuries or condition which they found appellee was, at the time of the trial, suffering from which were due to the accident of December, 1909, and that, unless they were able to determine from the evidence what portion of his injuries, if any, were occasioned by the negligence, if any, of the appellant, and what portion was occasioned by the accident on the railway in December, 1909, to return a verdict in favor of the appellant.

[6] In answer to the fourteenth assignment, which complains that the court erred in refusing to charge the jury not to consider as a ground of negligence against the appellant the fact that the electric light pole was raised by men with pike poles, instead of by block and tackle, it may be said that nowhere in the court's charge was a verdict in favor of the appellee authorized if the jury should find that appellant was guilty of negligence in adopting the method of raising the pole by men with pike poles, instead of by block and tackle, and hence it cannot be assumed

that the jury based their verdict upon any such ground of negligence. The effect of the failure to submit such an issue was to withdraw it from the consideration of the jury. In refusing the special charge in question and in instructing the jury as the court did, the principle that a master cannot be charged with a breach of the duty owed his servant, simply on the ground that a safer method or a safer instrumentality than that from which the injury resulted was available and might have been adopted by him, was not, in our opinion, violated. Whether in selecting the tools and instrumentalities for appellee and his colaborers to do the work required of them appellant exercised reasonable or ordinary care to provide such as enabled them to perform their duties in reasonable safety was made the test, and the true test, of appellant's liability, by the court's charge, and not whether appellant should have selected and used a block and tackle with which to lift and place the pole in position.

[7] The right of an employer to conduct his own business in his own way is limited so that the right shall not infringe upon the obligation of the master to exercise reasonable care to furnish his servant a reasonably safe place in which to work and reasonably safe instrumentalities with which to perform the work required of him. Jarrell v. Blackbird Coal Co., 154 Mo. App. 552, 136 S. W. 754. Appellee's petition charged that appellant negligently failed to furnish reasonably safe tools and implements with which to perform the work required of him, in that one of the pike poles was fitted with a loose pike or spike, and that the crutch or jenny furnished had too small a cross for use in raising such a large pole as the one being raised when appellee received the injury of which he complains, and the charge of the court instructed the jury, in substance, that if they believed from the evidence that the plaintiff, with his colaborers, was directed by J. H. Calhoun, appellant's vice principal, to raise and place in position the pole "as alleged in plaintiff's petition," and the same was negligence, etc., to find for plaintiff. Thus the charge of the court confined appellee's right to recover, in so far as the method adopted in raising the pole was concerned, to the negligence of appellant in failing to provide reasonably safe tools and implements to be used therefor. In any view of the matter, however, we do not believe we would be warranted in reversing the case because of the failure of the court to give the charge in question.

[8] Nor do we think the case should be reversed because the court refused to charge the jury, at the instance of appellant, "not to consider herein for any purpose the statement made by plaintiff while on the stand that the defendant failed to give him employment for the balance of his life as they had agreed to do." Doubtless, the testimony was

inadmissible, but the record fails to show that any objection was made to it at the time it was given, or motion then made to strike it out. Indeed, the statement of facts, as pointed out by appellee, shows that the testimony was brought out by appellant on cross-examination. In this state of the record appellant will not be heard to complain.

[9, 10] The sixteenth and last assignment of error is that: "The court erred in refusing to permit the appellee to state, upon objection being made by his counsel what physicians in San Antonio stated to him or in his presence with reference to the advisability of an operation on his hip, and what said physicians told him would be the result if he did not have the operation performed as is shown by the defendant's bill of exceptions No. 1." The proposition advanced is to the effect that "this testimony was material on the question as to whether the appellee had fully recovered from his railroad accident of 1909, as his own testimony and that of several of his witnesses tended to show, and was also material upon the issue pleaded by the appellant that the injuries from which appellee is at present suffering were in consequence of the railroad accident, and were not due to what happened at the pole raising on July 27, 1912." Neither the assignment of error nor the bill of exceptions reserved to this action of the court shows when the statements of the physicians proposed to be shown were made, or whether the operation advised by them, if any was advised, was believed to be necessary because of the injury sustained by appellee in December, 1909, or the injury sustained by him for which damages are sought in this action, and hence the materiality of the testimony excluded does not appear. But, aside from this, the testimony was purely hearsay and inadmissible.

We have discovered no error requiring a reversal of the case, and the judgment of the court is therefore affirmed.